**Ricky GRAHAM, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 30, 1983.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court April 11, 1984.

Armand I. Judah, Appellate Public Advocate, Louisville, for appellant.

Steven L. Beshear, Atty. Gen., Eileen Walsh, Asst. Atty. Gen., Frankfort, for appellee.

Before WHITE, LESTER and McDONALD, JJ.

WHITE, Judge.

This appeal is taken from a judgment of the Mason Circuit Court by which appellant Ricky Graham was convicted on a charge of trafficking in a Schedule II non-narcotic.

On the night of September 10, 1982, Ricky Graham and three of his friends engaged in drinking at several bars in the Maysville area. Somewhat after 2 a.m. two of the friends were dropped at their home, leaving appellant and Roy Lee Whisman, the vehicle's owner, in the car. As to what subsequently occurred, the testimony is conflicting.

Appellant asserts that, as he moved to the driver's seat, he noticed several pills on the car's floor. Allegedly believing them to be for Mr. Whisman's back and leg (Mr. Whisman is an amputee), he picked them up, wrapped them in a bag, and put them in his pocket, there being no room on the dash.

Thereafter, the two drove to a Save-Mart store. According to Mr. Graham, he entered only to buy soft drinks; however, a clerk there testified that an attempt was made by Mr. Graham to sell him both Tuinals and valium.

Upon leaving, the white Camaro in which Mr. Graham and Mr. Whisman were driving was halted by two separate vehicles of the Maysville City Police. One officer testified that he had received a call from headquarters "[t]hat a man in a white Camaro, at the red light on Forest Avenue, and he didn't specify which red light, but that he was waving a gun at someone" and that he, thereupon, had proceeded in the direction of the Save-Mart. The second stated that he "had had a complaint on the vehicle. A[n anonymous] subject called the station and advised that someone had pulled a gun on them at Forest Avenue and Wood Street, and described the car as a white Camaro, and he also advised at that time that the vehicle had pulled onto the Save-Mart lot."

After stopping the vehicle, the police noticed in plain view certain pills on the car's floor. Thereupon the entire car was searched, revealing several bottles of drugs and a pistol in the glove compartment. A subsequent pat-down search of Mr. Graham resulted in the discovery of the aforementioned packet of pills. These turned out to be the Tuinals which formed the basis of his conviction.

It is stated for Mr. Graham that "[t]he crux of the appellant's argument centers around probable cause." Specifically, it is argued that there was no probable cause for an investigatory stop and warrantless search of the vehicle; further, it is asserted, an anonymous tip cannot supply the basis for the needed probable cause.

■ In response the Commonwealth properly points out that probable cause is not the standard by which the stopping of a vehicle by the police is measured. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), speaks to the conduct of investigative stops. Weighing government intrusion against the privacy interest involved with automobiles, the Supreme Court acknowledged that individual rights outweigh an officer's unbridled discretion. Howsoever, it concluded that stops are proper "in those situations in which there is at least *articulable and reasonable suspicion that* a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or *an occupant is otherwise subject to seizure for violation of law ....*" *Prouse*, at 440 U.S. 663, at 99 S.Ct. 1401, at 59 L.Ed.2d 673. (Emphasis added.)

This embraced the spirit of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in which at 392 U.S. 22, at 88 S.Ct. 1880 it was observed that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Can an anonymous tip form the basis for a police officer's articulable and reasonable suspicion? The Commonwealth suggests, and our research confirms, that consideration of this narrow issue is a matter of first impression in Kentucky. *Cook v. Com-*

*monwealth,* Ky., 649 S.W.2d 198 (1983), addressed with general favor the situation of an unidentified, albeit reliable, informant; herein, we must go one step further.

We are cited to several cases from sister jurisdictions in which anonymous tips were approved. *State v. Jernigan,* 377 So.2d 1222 (La.1979), cert. den. 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980), *State v. Hetland,* 366 So.2d 831 (Fla.App.1979), and *People v. Smithers,* 83 Ill.2d 430, 47 Ill. Dec. 322, 415 N.E.2d 327 (1980).

■ The conclusion to be drawn from these is that the anonymous tip may be used if supported with indicia of reliability. Applying that to our immediate fact situation, we hold that under its peculiar circumstances such were present.

■ According to the testimony of the arresting officers, a caller advised that a gun was being waved from a white Camaro on Forest Street. It is unclear whether the gun had been waved at the caller or at another; however, each officer spoke to its being waved at someone rather than just being brandished in the air. Appellant concedes this in his brief: "Here, there is only a mere allegation that a gun had been waived (sic) *at someone."* (Emphasis added.) At the very least such would form the basis of a criminal violation of KRS 508.-050, Menacing, satisfactory to *Prouse*'s reference to "subject to seizure for violation of law."

The hour was somewhat after 2 a.m., a period during which it can be judicially noted that the streets of Maysville are normally without significant traffic. Indeed, a full description of the vehicle, *e.g.* license number, was not given; however, the time was such that the additional information provided by that was not vital. The possibility of there being two white Camaros in that particular vicinity at that particular early morning hour was scant. It is to be noted that, of course, the report of a white Camaro's being in that area was confirmed by finding a vehicle of that make and color in the region described.

We are not considering whether the mere description "white Camaro" would be satisfactory in heavy daytime traffic. We merely conclude that, given the circumstances of reference to a particular location at a time when traffic was very light, thereby creating little doubt as to what vehicle was involved, the indicia of reliability were present as to support the anonymous tip.

Therefore, based upon the aforementioned reasoning the judgment of the Mason Circuit Court is affirmed.

All concur.