Daryle G. CREECH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 89-CA-2347-MR.

Court of Appeals of Kentucky.

March 22, 1991.

Discretionary Review Denied by Supreme Court Aug. 21, 1991.

Mark Alan Posnansky, Appellate Public Advocate, Louisville, for appellant.

Frederic J. Cowan, Atty. Gen., Valerie L. Salven, Asst. Atty. Gen., Frankfort, for appellee.

Before HOWERTON, CLAYTON and McDONALD, JJ.

HOWERTON, Judge.

Daryle Creech moved to suppress evidence obtained in the seizure of cocaine, and when the trial court denied the motion, Creech entered a conditional plea. RCr 8.09. He was sentenced to two years in prison. The only issue we must determine is whether the stop of Creech's pick-up truck violated his constitutional rights to be free from unreasonable search and seizure. U.S. Const.Amend. IV; Ky. Const. § 10. Clearly, if the vehicle were stopped on the basis of articulable suspicion of criminal activity, then there was no violation by the introduction of evidence seized in plain view. We find no violation and affirm.

Creech and a male companion were seated in Creech's truck in the parking lot of the Kit Kat Club in Covington in the early morning hours of May 5, 1989. The motor was not running and the vehicle was dark. Officer Jim Kim was on patrol in the area and observed the vehicle at about 2:45 a.m. He testified that the vehicle was in the extreme corner of the lot and that the two occupants were hunched over, facing each other. Kim testified that he had to drive around the lot in order to enter, and that as he did so, the vehicle started to leave, but Creech stopped in response to Officer Kim's flagging him down. On the basis of evidence found in a search of the truck, Creech was indicted for possession of a narcotic controlled substance, KRS 218A.140(2).

■ In order for the stop of Creech's vehicle to have been proper, and thus for a search to have been permissible, the officers must have had an articulable and reasonable suspicion of criminal activity. *Martin v. Commonwealth*, Ky., 592 S.W.2d 134, 139 (1979); *Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980). In *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), discretionary spot checks of vehicles were not permissible under the Fourth Amendment merely to enforce traffic and vehicle safety regulations and promote public safety. 440 U.S. at 659, 99 S.Ct. at 1399. There, the Court held that "except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment." 440 U.S. at 663, 99 S.Ct. at 1401. However, in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the Supreme Court approved a brief stop to determine a person's identification or to maintain the status quo momentarily while obtaining more information but that case still retained the requirement that the individual must be suspicious to warrant such a stop. 407 U.S. at 146, 92 S.Ct. at 1923.

■ Thus, a random stop of a motorist merely to check for proper licensing and regulation would be violative of the Fourth and Fourteenth Amendments to the U.S. Constitution. The Commonwealth cited the case of *Commonwealth v. Hagan*, Ky., 464 S.W.2d 261 (1971), as authority for such a random stop. That case reads in pertinent part, "We know of no reason why a peace officer should not be permitted to stop any vehicle on the highway at any time for any reasonable purpose." *Id.* at 263. The operative words here would be "reasonable purpose." *Prouse* would appear to say

then that a random stop merely to check for licensing and registration is not reasonable. There must also be some articulable suspicion that the motorist is unlicensed or that the vehicle or an occupant is subject to seizure for violation of some law. 440 U.S. at 663, 99 S.Ct. at 1401.

In the present case, Officer Kim gave the following account of the behavior which made him suspicious:

> They were facing, appeared to be facing each other and they were sort of hunched towards each other and it was after hours and as I stated, they were parked in the extreme corner of the parking lot as if to be set aside from everything else and my intentions at the time was [sic] just to check for ownership of the vehicle and proper papers as far as driving and so forth.

He had earlier testified that "[i]t was a suspicious situation that we had to more or less check out." Kim also stated that "[w]e more or less flagged them down and at that point just basically to secure the vehicle, make sure that it was proper ownership and so forth, I asked Mr. Creech for a driver's license."

■ It appears that the conduct of Creech and his companion raised the suspicions of the officer, and asking to see Creech's license was in furtherance of either dispelling or confirming the suspicions and of maintaining the status quo while obtaining more information. *Cf. Adams, supra,* 407 U.S. at 146, 92 S.Ct. at 1923. It would be reasonable to suspect, considering the totality of the circumstances, that Creech and his companion could have been involved with a stolen vehicle or certainly could have been engaging in some criminal activity at the time and place Kim observed them.

When Kim approached the truck and asked to see Creech's license, Creech appeared to have some difficulty complying. Kim shone a flashlight on Creech's wallet and then flashed it over on the other passenger to see what his hands were doing. In the process, the light illuminated a bent spoon with white residue on the floor of the truck near the passenger side. After seeing the spoon, Kim also shone the light above and saw a syringe above Creech's sun visor. Kim then told Creech and his companion to get out of the truck, and Kim and Officer Marmora searched the vehicle, turning up more white powder, syringes, and other drug paraphernalia. Following his arrest at the scene, Creech was subjected to a pat-down which turned up additional white powder.

We agree with the trial court that Officer Kim had a reasonable suspicion to stop Creech's truck, based on the conduct he observed. The stop met the criteria set forth in *Prouse, supra.* Having found that the stop was permissible, then clearly the evidence obtained as a result would be admissible. The spoon, white residue, and syringe were then within plain view, *Coolidge v. New Hampshire,* 403 U.S. 443, 446, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971), and subject to seizure, and they provided probable cause for further search and arrest. *U.S. v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

The denial of the motion to suppress and the judgment are affirmed.

All concur.