Marcus T. DARDEN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 1999-SC-0791-DG.

Supreme Court of Kentucky.

Aug. 23, 2001.

Irvin J. Halbleib, Jr., Appellate Public Advocate, Louisville, for Appellant.

A.B. Chandler, III, Attorney General, Todd D. Ferguson, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for Appellee.

STUMBO, Justice.

A Todd Circuit Court jury convicted Marcus T. Darden of possession of a controlled substance in the first degree (enhanced by possession of a firearm), possession of a weapon on school property, and possession of marijuana. Darden was sentenced to a total of five (5) years imprisonment. The Court of Appeals, sitting *en banc*, affirmed his conviction. We granted discretionary review and now reverse and remand the case to the Todd District Court.

Officer Moberly, a policeman with the Elkton Police Department, testified that he, along with two other officers, provided security for a high school football game on September 15, 1995. At some time during the game he responded to a call from Sergeant Marklin regarding a complaint from the school principal that an odor of marijuana was emanating from an adjacent baseball field. Moberly was instructed to approach the baseball field by patrol car. Upon entering the lot, Moberly stated he observed five black males walking from the baseball field to the parking lot and watched them get in a car and drive away together. In accordance with Marklin's directive, he followed the car and stopped the vehicle approximately 150 yards from the gate of the school. When Appellant rolled down the window, Moberly noticed the strong smell of marijuana. Moberly then asked if any drugs or weapons were in the car, to which Appellant directed him to the glove compartment. A consensual search revealed drugs, marijuana and cocaine, drug paraphernalia and weapons.

Since Appellant was a minor at the time of the offense, he was initially proceeded against in the juvenile session of the Todd District Court. On October 5, 1995, the Commonwealth moved to transfer the case

to the circuit court for trial as an adult due to his possession of a weapon on school property pursuant to KRS 635.020(4). The court granted the motion and Darden was indicted on March 13, 1996. Testifying in his own defense, Appellant denied both knowledge of the car's contents and any incriminating statements that were attributed to him by Moberly. He also testified that his older brother, who was present in the car at the time of the stop, later admitted to him that the items found were his.

### SUPPRESSION OF EVIDENCE

We first address the issue of the search and seizure of the evidence found in the car. Darden argues that the automobile stop and related search were unreasonable for want of objective indicia particular to its subject and want of authority to arrest for the crime ostensibly being investigated. Essentially, Darden asserts that there was no individualized suspicion present here because Moberly did not smell marijuana on the school grounds himself and saw no unusual activity. He therefore could not have had a reasonable and articulable suspicion regarding Darden's behavior. Moreover, says Darden, the stop was ostensibly implemented for investigation of mere marijuana possession, a misdemeanor that is exempt from warrantless arrest unless actually committed in the presence of an officer. KRS 218A.1422, KRS 431.005. Darden says that since the stop was illegal, the fruits of that stop, inclusive of both tangible evidence and any incriminating statements attributed to Appellant, should have been suppressed.

█ The Commonwealth argues, and we agree, that it was reasonable for the officer to assume that the people who had just left the baseball field may have been the source of the marijuana smoke given the fact there was no one else on the baseball field or in the parking lot. In *Creech v.* *Commonwealth*, Ky.App., 812 S.W.2d 162, 163–64 (1991), the Court of Appeals approved an investigatory stop after the officer observed the defendant's truck, late at night, in the extreme corner of the club's parking lot, with two occupants hunched over, facing each other. Further, in *Graham. v. Commonwealth*, Ky.App., 667 S.W.2d 697, 699 (1983), the Court of Appeals upheld an investigatory stop, based upon an anonymous tip, to investigate a possible misdemeanor. In the case at bar, the tip was not even anonymous, but came from the school principal, surely a reliable source. Moberly had a reasonable suspicion that the subjects in the car were involved in criminal activity such that a stop of the car for purposes of investigating the possible criminal behavior was justified. We do not find the holding of the trial court to be clearly erroneous. Likewise, we affirm the holding of the trial court and the Court of Appeals with regard to this issue.

### "USE" OF A FIREARM

█ Darden argues that the trial court erred in allowing the case to be transferred from juvenile court to circuit court because unlawful possession of a firearm is not actual use of a firearm and does not satisfy KRS 635.020(4). KRS 635.020 lists several criteria to be met before a child can be tried as an adult in circuit court. Subsection (4) allows the case to be transferred to circuit court if: 1) the child is charged with a felony; 2) the child is fourteen (14) years old; and 3) a firearm was used in the commission of that felony. The Commonwealth argues that because Darden was charged with the felony of possession of a firearm on school property, a violation of KRS 527.070, the statute which allows him to be tried in circuit court is automatically activated. According to the Commonwealth, the act of possessing the weapon is the illegal act itself and constitutes "use in the commission of

the offense" as required by KRS 635.020(4). Therefore, mere possession of a weapon on school property would allow the automatic transfer to circuit court and allow him to be tried as an adult. The trial court found this convincing, as did the Court of Appeals. We believe this result to be illogical and entirely against the intent of the legislature.

In *Haymon v. Commonwealth*, Ky., 657 S.W.2d 239 (1983), this Court held that the term "use of a weapon" in the burglary statute was ambiguous because it is subject to two entirely different interpretations, presence and actual use, and defendants are entitled to the benefit of the ambiguity:

> The Commonwealth contends that possession of a weapon involves its use; that the intent of the General Assembly was to deter the involvement or presence of weapons in the commission of crimes. Admittedly, the word "use" is subject to such a construction.

> On the other hand, the General Assembly took pains to distinguish between being "armed" with a weapon and the "use of a weapon" in the burglary statute. The offense can be committed by one who is only "armed" with a deadly weapon but when dangerous instruments are involved there must be a showing of their use or threatened use. The movant contends, therefore, that mere possession of a weapon constitutes being "armed" with a weapon but "use" of a weapon contemplates that it be employed in some manner in the commission of an offense. This too is a plausible explanation of the meaning of the word "use."

> We conclude that the phrase "use of a weapon" as it is used in K.R.S. 533.060(1) is ambiguous in that it is subject to two entirely different but nevertheless logical interpretations. It is not possible to determine which meaning the

General Assembly intended to be given to the phrase "use of a weapon" and for that reason the movant is entitled to the benefit of the ambiguity.

*Id.* at 240.

■ We believe the terms "possession of a weapon" and "use of a weapon" are two entirely different concepts. Further, doubts in the construction of a penal statute are to be resolved not only in favor of lenity, but also against a construction that would produce extremely harsh or incongruous results. *Commonwealth v. Colonial Stores, Inc.,* Ky., 350 S.W.2d 465, 467 (1961). Interpreting these terms as one in the same would yield extremely harsh and disproportionate results for the trying of juvenile cases, and is clearly not what the legislature intended. This rule of construction, in itself, mandates the reversal of Darden's conviction, but we believe more needs to be said on the subject.

The legislative scheme found in the Juvenile Code illustrates a connection between the seriousness of the offense and the nature of the proceedings faced by a juvenile. For instance, certain offenses do not make a juvenile eligible for transfer to circuit court at all, while some offenses mandate transfer, such as felonies where a firearm was used in the commission of the offense. KRS 635.020. However, even more cases provide for a discretionary waiver into circuit court. These cases include those where the juvenile is older than fourteen (14) and charged with a capital offense or Class A or Class B felony, and those children sixteen (16) or older who have previously been convicted of a felony. *Id. See also,* KRS 640.010. It is inconceivable that the Legislature would provide that waiver is discretionary if a child murders someone with a knife, but provide that waiver is mandatory for a minor who merely brings his hunting rifle to school in the gun rack of his pickup truck.

Furthermore, we are cognizant of the inherent dangers, especially as of late, of children carrying guns to school. We believe the legislature has attempted to remedy this by making it a felony to even possess a weapon on school grounds. KRS 527.070(1). Our shock and horror at the recent tragedies surrounding guns and schools does not justify this Court to read enhancing penalties into a statute where none exist.

Therefore, based on the aforementioned reasoning, the judgment of the Todd Circuit Court is reversed and the case is remanded to the juvenile division of the Todd District Court for further proceedings.

COOPER, GRAVES, JOHNSTONE, and KELLER, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion, with LAMBERT, C.J., joining that dissent.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from that part of the majority opinion which reverses and remands this case to the district court because of the interpretation placed by the majority on the phrase "use of a weapon."

The key to this case is the interpretation placed on *Haymon v. Commonwealth*, Ky., 657 S.W.2d 239 (1983). In *Haymon, supra*, the phrase "use of a weapon" was determined to be subject to two interpretations: one being mere possession of a weapon during the commission of a felony, and the other being that the weapon was employed in the commission of the offense. The language of *Haymon* that possession of a firearm did not constitute use of a firearm was made in the context of deciding whether a person who stole a firearm during the commission of a burglary could be denied probation. *Haymon* acknowl-

edged that the use of a firearm might mean it is employed in the commission of the offense. *Haymon* recognized an ambiguity in the language of KRS 533.060(1), and resolved such ambiguity in favor of the defendant.

In this case, no ambiguity exists. The offense of "unlawful possession of a weapon on school property" is defined by KRS 527.070. It states in pertinent part:

... a person is guilty of unlawful possession of a weapon on school property when he knowingly deposits, possesses, or carries ... any firearm or other deadly weapon in any public or private school building or bus, on any public or private school campus, grounds, recreational area, athletic field, or any other property owned, used or operated by any board of education....

The statute prohibits anyone to knowingly possess a firearm on school property, for purposes "other than instructional or school sanctioned ceremonial purposes." It is possession of a weapon on school property, in violation of KRS 527.070, which constitutes the offense committed for purposes of KRS 635.020(4), the Juvenile Transfer Provision. A firearm possessed in violation of KRS 527.070 is the use of a firearm for purposes of KRS 635.020(4). *Haymon* understood that in certain circumstances possession of a weapon involves the use of the weapon when it admitted that the word "use" is subject to a construction which involves possession only. *Haymon* at 240. Two statutory syllogisms are helpful. A person who possesses a firearm on school property commits a felony. Darden possessed a firearm on school property. Therefore, Darden committed a felony. A child over the age of 14 who commits a felony and uses a firearm during the commission of an offense shall be transferred to circuit court. Darden is over the age of 14, committed a felony and used a firearm during

the commission of an offense. Therefore, Darden shall be transferred to circuit court.

The legislative intent of the General Assembly was abundantly clear in that it was to deter involvement or the presence of weapons in the commission of crimes on school property. Such a construction is not unduly harsh, nor does it produce an incongruous or disproportionate result. It is not necessary to dwell on the tragic consequences of school-related weapon possession which has touched every community in the nation, including Kentucky.

There is no ambiguity between the word "use" or "possession" of a weapon insofar as it relates to the commission of an offense prohibited by KRS 527.070. The trial judge was correct when he authorized the juvenile transfer and the Court of Appeals was correct when it affirmed such a decision.

LAMBERT, C.J., joins in this dissent.