The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Manuel D. GARCIA,
Defendant–Appellee.

No. 89SA368.

Supreme Court of Colorado,
En Banc.

April 9, 1990.

Stephen K. ErkenBrack, Dist. Atty., and John J. Fuerst III, Deputy Dist. Atty., Grand Junction, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, and Harvey M. Palefsky, Deputy State Public Defender, Grand Junction, for defendant-appellee.

Justice LOHR delivered the Opinion of the Court.

The prosecution has filed this interlocutory appeal pursuant to C.A.R. 4.1 challenging an order of the Mesa County District Court suppressing physical evidence. Grand Junction police officers discovered the evidence after they stopped the defendant as he was driving a car down an alleyway. The trial court concluded that

the officers lacked reasonable suspicion to justify the stop. The trial court, therefore, suppressed evidence seized during the subsequent consensual search of the car the defendant was driving. We affirm the trial court's order and remand the case for further proceedings.

### I.

On July 5, 1989, Officer Mark Angelo of the Grand Junction Police Department received information from an anonymous call to Crime Stoppers.[1] The caller said that a person named Manuel Ramon Diaz would be leaving the apartment area in the 300 block of Chipeta and driving away in a car parked in the alley. The caller described the car as a brown Toyota or a brown station wagon with license plate UHC788. The caller said that Diaz would be leaving at approximately 1:00 p.m. on that day and that there would be approximately half an ounce of cocaine under the car's hood in the engine compartment.

Officer Angelo relayed this information to Officer John Zen. Officers Zen, Booth and Callow then drove past the 300 block of Chipeta and saw a brown station wagon with license plate UHC788 parked behind some apartments in that block. They waited nearby in a car. At 1:10 p.m. they saw a man, who was later identified as Manuel Diaz Garcia, also known as Manuel Ramon Diaz, enter the brown station wagon and drive down the alley. The officers then drove their car into the alley and intercepted the defendant's vehicle.

The officers got out of their car. Officer Zen identified himself as a police officer, and the defendant and a woman who was with him got out of the brown station wagon. In response to questioning, the defendant stated that his name was Manuel Diaz, that the car belonged to someone named Sonny, and that there were no drugs in the car. Officer Zen then requested and received permission from the defendant to search the car.[2]

The officers found approximately half an ounce of cocaine under the hood of the car. The trial court granted the defendant's motion to suppress this evidence based on its conclusion that the cocaine was seized during a constitutionally impermissible stop. The prosecution now appeals.

### II.

The prosecution argues that the initial stop of the defendant was a valid investigatory stop authorized by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971). We disagree.

■ Under both the United States Constitution[3] and the Colorado Constitution[4] a police officer may stop a person for investigatory purposes under narrowly defined circumstances without having probable cause to arrest the person. *See Terry*, 392 U.S. at 30, 88 S.Ct. at 1884; *People v. Schreyer*, 640 P.2d 1147, 1149 (Colo.1982); *Stone*, 174 Colo. at 508, 485 P.2d at 497. For the stop to be constitutionally valid: "(1) there must be an articulable and specific basis in fact for suspecting that criminal activity has taken place, is in progress, or is about to occur; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose." *People v. Contreras*, 780 P.2d 552, 555 (Colo. 1989); *accord People v. Ratcliff*, 778 P.2d 1371, 1376 (Colo.1989).

■ The issue in this case centers on the first of these three criteria. Before making an investigatory stop, an officer must

---

1. Crime Stoppers is a program designed to encourage members of the public to report information about crime. Callers remain anonymous.

2. The trial court found this consent to have been given voluntarily, and that ruling is not at issue in this appeal.

3. The fourth amendment to the United States Constitution provides, in pertinent part, that

"[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures shall not be violated."

4.. Article II, § 7, of the Colorado Constitution provides, in pertinent part, that "[t]he people shall be secure in their persons ... from unreasonable searches and seizures."

reasonably suspect that an individual is engaged in, has engaged in or is about to engage in criminal conduct. *Terry,* 392 U.S. at 30–31, 88 S.Ct. at 1884–85; *Ratcliff,* 778 P.2d at 1376; *Stone,* 174 Colo. at 509, 485 P.2d at 497. We have required that an officer's suspicion have "an articulable and specific basis in fact." *People v. Savage,* 698 P.2d 1330, 1334 (Colo.1985). The question is "whether there were specific and articulable facts known to the officer, which taken together with rational inferences from these facts, created a reasonable suspicion of criminal activity to justify the intrusion into the defendant's personal security." *People v. Thomas,* 660 P.2d 1272, 1274 (Colo.1983). In determining whether reasonable suspicion existed, we must look to the totality of circumstances. *Contreras,* 780 P.2d at 555; *People v. Bell,* 698 P.2d 269, 272 (Colo.1985).

▮ An anonymous tip, by itself, lacks indicia of reliability sufficient to establish reasonable suspicion. *Contreras,* 780 P.2d at 555; *see also People v. McPherson,* 191 Colo. 81, 85, 550 P.2d 311, 315 (1976). An anonymous tip together with corroborating observations, however, may provide a specific and articulable basis in fact to suspect that an individual is engaging in criminal conduct. *Contreras,* 780 P.2d at 555. In some circumstances the verification of seemingly innocent details contained in a tip from an anonymous informant can be sufficient to supply the requisite corroboration. *See People v. Villiard,* 679 P.2d 593 (1984); *cf. Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (evaluating sufficiency of affidavit for search warrant to establish probable cause).

▮ Applying these standards, the trial court determined that the officers lacked reasonable suspicion to justify stopping the defendant. We conclude that the record supports the trial court's ruling.

The tip upon which the investigatory stop was based was completely anonymous. The caller did not provide his or her name and had no known prior record of providing reliable information. The total anonymity of the informant distinguishes this case from *People v. Lucero,* 182 Colo. 39, 511

P.2d 468 (1973). In *Lucero,* unidentified informants at the scene of an armed robbery spoke to police officers in person and described the getaway vehicle. Based on this description, officers stopped the vehicle and ultimately arrested the defendant. In upholding the validity of the stop, we stated that "we consider a group of unidentified citizen informants who describe a getaway vehicle in response to an on the scene police investigation to possess sufficient reliability to give rise to reasonable cause to stop the described car for investigatory purposes." *Id.* at 43, 511 P.2d at 470.

This case is also distinguishable from *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), upon which the prosecution relies in urging reversal. In *Adams,* a person known to a police officer approached the officer and informed him that an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist. The officer approached the vehicle and tapped on the window. When the occupant rolled down the window, the officer reached in and removed the revolver from the occupant's waistband. In holding that the tip justified the officer's initial actions, the Court emphasized that the officer knew the informant, the informant had provided reliable information in the past, and he might have been subject to immediate arrest for making a false complaint. The Court stated:

> Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime— ... an appropriate police response [is warranted].

407 U.S. at 147, 92 S.Ct. at 1924.

The prosecution argues that the specificity of the caller's information provided sufficient indicia of reliability to create reasonable suspicion in this case. The caller's information, however, was not very specific

or complete. The caller did not provide the exact address on Chipeta, a description of the defendant, or the defendant's destination. The caller did not indicate when the cocaine had been hidden in the car or how the caller knew that it was there. Furthermore, the caller did not mention that the defendant would be accompanied by a woman.[5]

Although the caller's description of the car parked in an alley along the 300 block of Chipeta and the caller's prediction that a person would enter the car at approximately 1:00 p.m. were corroborated by police surveillance,[6] these facts are not at all suspicious. In this respect, this case differs from *People v. Contreras*, 780 P.2d 552 (Colo.1989), in which the anonymous informant's report that a "car strip" was in progress at a specified location was corroborated by police observation of the stripped car. In *Contreras*, we held that the combination of the tip and the corroboration supported the on-scene stop of a person who stepped out of a vehicle matching the informant's description of the vehicle into which the car parts had been loaded. In the present case, however, the information corroborated prior to the stop was commonplace and unremarkable. It was not sufficient in character or extent to suggest reliably that the informant had particularized knowledge of the defendant's activities. *Compare* this case with *People v. Villiard* (police surveillance corroborated description of defendant and pattern of activity consistent with tip that defendant was engaged in drug transaction).

The constitutional permissibility of each stop must be determined on its own facts based upon the totality of the circumstances. This requires line-drawing in a manner sensitive at once to the defendant's constitutional rights to be free from unreasonable seizure and to the importance of allowing law enforcement officers scope for prompt investigation of criminal activity. In this case the informant was anonymous. The informant did not indicate how or when he or she acquired the information supplied to Crime Stoppers. The only information corroborated prior to the stop was that a man would leave a described group of apartments at a particular time and would enter a described car and drive away—a pattern of conduct intrinsically unsuspicious. In sum, the credibility of the informant and the basis of the informant's knowledge were unknown. Only the corroboration of one instance of commonplace activity suggested that the tip was reliable. We hold no more than that considering the facts of this case in totality, the police officers lacked an articulable and specific basis in fact for suspecting that criminal activity was afoot. The investigatory stop, therefore, failed to satisfy the requirements of *Terry* and *Stone* and was a constitutionally impermissible intrusion into the defendant's personal security.

### III.

Because the officers lacked reasonable suspicion to justify stopping the defendant, the trial court properly suppressed evi-

---

**5.** In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court adopted a totality-of-the-circumstances analysis to determine whether information supplied by an informant establishes probable cause to support the issuance of a search warrant. In doing so, it rejected the more rigid two-pronged test of *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), that had required a showing that the informant was credible or the information was reliable and that the informant had an adequate basis for the information supplied. In doing so, however, the Court held that the *Spinelli* requirements remain relevant considerations in determining probable cause. We adopted the totality of the circumstances analysis in *People v. Pannebaker,* 714 P.2d 904 (Colo.1986).

Although the requirement of probable cause is more stringent than that of reasonable suspicion, the treatment of anonymous tips in the probable cause context is instructive. In this case, the informant's tip failed to establish the credibility of the informant, the reliability of the information or the basis of the informant's knowledge that there was cocaine under the hood of the defendant's vehicle.

**6.** In its brief, the prosecution argues that the caller's identification of the defendant was also corroborated. That corroboration, however, was not obtained until after the officers stopped the defendant and, therefore, is irrelevant to the reasonable suspicion determination.

dence found in the search of the vehicle as fruit of the poisonous tree. *See Alderman v. United States,* 394 U.S. 165, 176–77, 89 S.Ct. 961, 968–69, 22 L.Ed.2d 176 (1969); *Wong Sun v. United States,* 371 U.S. 471, 484–86, 83 S.Ct. 407, 415–17, 9 L.Ed.2d 441 (1963); *People v. Briggs,* 709 P.2d 911, 915 (Colo.1985); *People v. Madson,* 638 P.2d 18, 33 (Colo.1981).

## IV.

Accordingly, we affirm the trial court's order suppressing evidence found in the search of the vehicle the defendant was driving. The case is remanded for further proceedings consistent with this opinion.

ROVIRA, J., dissents and QUINN, C.J. and MULLARKEY, J., join in the dissent.

Justice ROVIRA dissenting:

I respectfully dissent. Because I believe that the specificity of the informant's detailed information, coupled with the degree of corroboration, created a reasonable suspicion that defendant was engaged in criminal activity, I would reverse the trial court's suppression order.

We have held that an anonymous tip, when corroborated by further observations by police officers, may provide a specific and articulable basis in fact to suspect that a defendant is involved in criminal activity. *People v. Contreras,* 780 P.2d 552 (Colo. 1989). The focal point of our analysis is whether the corroborated information is sufficiently reliable to satisfy the reasonableness requirement of the fourth amendment. Guidance for this analysis, in turn, may be found in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), in which the United States Supreme Court discussed the factors which support probable cause when relying on an informant's tip. Because probable cause is a higher standard than that of reasonable suspicion, the Court's analysis may certainly be applied in assessing whether the less stringent standard has been met.

In *Gates,* the Court held that the informant's basis of knowledge, the veracity of the informant and the reliability of the reported information are "highly relevant" in evaluating the value of an informant's tip. It rejected a rigid two-pronged analysis which would require that these factors be proved independently, adopting instead a "totality of the circumstances" approach to evaluating the credibility of an informer's report.

*Gates,* although involving the issue of probable cause, is helpful in an evaluation of this case because the facts are so similar. *Gates* involved an anonymous tip concerning the possession of a large quantity of drugs. The tip was relatively specific, and many of the details were subsequently corroborated by law enforcement officials. In discussing the "reliability" of the information and the "veracity" of the informant, the court emphasized the degree of detail reported, and the fact that almost every detail had been independently corroborated. Further, the court indicated that corroboration of entirely innocent details was sufficient to support a probable cause determination. Finally, the informant's "basis of knowledge" was demonstrated by the degree of detail and the subsequent reliability of those details.

In this case, it is evident that the officers were in possession of specific and articulable facts. Although the informant was anonymous, the degree of detail and subsequent police corroboration lend credence to the informant's statement that the defendant would be in possession of illegal drugs at the time indicated by the informant. The informant provided a description of the vehicle involved, including its license number and location. Moreover, the complete first, middle, and last name of the driver was provided, and the date and time of his departure was detailed. Finally, the type and amount of the illegal drug was specified, as well as the location in which it would be found. This degree of specificity indicates that the informant based his report on "something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509,

1514, 12 L.Ed.2d 723 (1964); *see also State v. Hasenbank*, 425 A.2d 1330 (Me.1981).

The police were also able to corroborate a substantial part of the caller's information prior to stopping the defendant. They found the vehicle described by the informant, with license tags bearing the correct number, at the location which the caller reported the car would be found. Moreover, the caller's prediction of the future action of a third party proved accurate when a man entered the vehicle at the predicted time and started to drive away. The corroboration of these details supported an inference that the informant's other statements were true. "Because an informant is right about some things, he is more probably right about other facts." *Gates*, 462 U.S. at 244, 103 S.Ct. at 2335; *People v. Villiard*, 679 P.2d 593 (Colo. 1984).

The majority indicates that the corroboration of the details of the call should not be accorded much weight because the observed actions were "not at all suspicious." Op. at 193. However, *Gates* makes it quite clear that observation of innocent behavior is sufficient to demonstrate the reliability of the informant's tip so as to establish reasonable suspicion. Seemingly innocent activity becomes suspicious in light of the initial tip. "In making a determination of [reasonable suspicion] the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." *Gates*, 462 U.S. 213 n. 13, 103 S.Ct. 2317 n. 13.

The sufficiency of corroboration of innocent details was also demonstrated in *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In *Draper*, an informant provided information concerning a person who was trafficking drugs. He gave a physical description of the defendant and of the clothing he would wear, predicted that the defendant would arrive in Denver on a train from Chicago on either the 8th or 9th of September, and stated that defendant "walked real fast." On September 9, law enforcement officials saw a person, matching the physical description and wearing the clothing described by the informant, alighting from a train from Chicago and walking quickly to the exit. The United States Supreme Court found that this degree of corroboration, albeit of innocent details, was sufficient to establish probable cause to arrest the defendant. *See also United States v. Gomez*, 776 F.2d 542 (5th Cir.1985); *People v. Melgosa*, 753 P.2d 221 (Colo.1988).

The majority voices concern about the information which the informant did *not* provide, to show that the tip was "not very specific or complete." Op. at 192. As discussed above, I believe that the degree of detail provided by the caller made the information quite specific. Further, I disagree with an approach which focuses on the details which are lacking rather than the quantity and sufficiency of information which *is* conveyed. The determination of reasonable suspicion must be based on the actual information provided by an informant, and we should not measure this information against the infinite range of details which potentially could have been included. What might have been is no substitute for what is. Reasonable suspicion "simply does not require the perfection the [majority] finds necessary.... Indeed, the line-by-line scrutiny that the [majority] applies to the anonymous [tip] is akin to that which we find inappropriate in reviewing magistrate's decisions." *Gates*, 462 U.S. at 245 n. 14, 103 S.Ct. at 2336 n. 14.

Numerous other courts have found that reasonable suspicion was established based on the corroboration of innocent details of an anonymous tip. For example, in *United States v. McBride*, 801 F.2d 1045 (8th Cir. 1986), *cert. denied*, 479 U.S. 1100, 107 S.Ct. 1325, 94 L.Ed.2d 177 (1987), an anonymous caller stated that defendant had just left his house with heroin, described the car and license plate, and indicated that defendant was heading in a particular direction. Four hours later, law enforcement officials saw a car which matched the description, bearing appropriate license plates, in the vicinity of the described location. The court held that the caller's information and the subsequent corroboration were sufficient to create a reasonable suspicion that

defendant was involved in criminal activity. In *United States v. Aldridge,* 719 F.2d 368 (11th Cir.1983), police received an anonymous tip that persons in a large white automobile, possibly a General Motors or Chrysler product, with a broken tail light, were tampering with vehicles at a construction site. As the officer approached the site, he passed a large, white automobile with a broken tail light going in the opposite direction. The court held that although the officer could only corroborate innocent details of the anonymous tip, the facts were sufficient to justify an investigatory stop.

Finally, in *State v. Thomas,* 542 A.2d 912 (N.J.1988), police received an anonymous tip that a person named Ike was in possession of illegal drugs in a certain bar. The caller described the suspect's clothing. Upon investigation, only one of the approximately twenty-five patrons in the bar matched the description. Further, police recognized the suspect as one who had been arrested in the past for drug possession. The court held that the detailed description of the suspect and its corroboration created reasonable suspicion sufficient for an investigatory stop. *See also United States v. White,* 648 F.2d 29 (D.C.Cir.), *cert. denied,* 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981); *United States v. Johnson,* 540 A.2d 1090 (D.C.App.1988); *State v. Webb,* 398 So.2d 820 (Fla.1981); *State v. Hetland,* 366 So.2d 831 (Fla.App.1979), *aff'd,* 387 So.2d 963 (Fla.1980); *Graham v. Commonwealth,* 667 S.W.2d 697 (Ky.App. 1983); *Commonwealth v. Anderson,* 366 Mass. 394, 318 N.E.2d 834 (1974).

In view of the degree of detail and corroboration in this case, I believe that the information possessed by law enforcement officers rose to the level of reasonable suspicion so as to justify an investigatory stop. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

Accordingly, I would reverse the trial court's order suppressing the drugs found in the search of the vehicle.

I am authorized to say that Chief Justice QUINN and Justice MULLARKEY join me in this dissent.