**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Robert Brian HILL, Defendant–Appellee.**

**No. 96SA289.**

Supreme Court of Colorado, En Banc.

Dec. 23, 1996.

Peter F. Michaelson, District Attorney, Fifth Judicial District, and F. Michael Good-bee, Chief Deputy District Attorney, Eagle, for Plaintiff–Appellant.

Bruce C. Carey, Eagle, and James E. Fah-renholtz, Avon, for Defendant–Appellee.

Chief Justice VOLLACK delivered the Opinion of the Court.

In this interlocutory appeal, the People seek review of an order entered by the Eagle County District Court suppressing (a) evidence of controlled substances found in the defendant's possession and (b) statements made by the defendant. The trial court determined that the police officers lacked probable cause to arrest or search the defendant at the time the officers searched the defendant's automobile. We reverse the trial court's ruling.

## I.

On March 13, 1996, at approximately 7:45 p.m., Officer Albert Stutson (Officer Stutson) and Officer Brian Hoffman (Officer Hoffman) of the Vail Police Department were on foot patrol in the Lionshead parking structure. That night, the Lionshead parking lot was the primary parking facility for patrons of a nearby concert at the Dobson Ice Arena.

The officers were on foot patrol in the Lionshead parking lot because there was a history of illegal activities at the lot on concert nights.[1]

Officer Stutson testified that as he and Officer Hoffman were patrolling the Lionshead parking lot, he saw a parked tan Ford Taurus with three men inside. The defendant, Robert Hill (Hill), was seated in the driver's seat of the vehicle. As the officers were approximately thirty to forty feet away and walking toward the vehicle, Hill looked up from fidgeting with something in his lap. According to Officer Stutson, Hill widened his eyes when he saw the officers, then made a rapid motion with his right hand toward the floorboard, as if to conceal something.

Officers Stutson and Hoffman then approached the vehicle and Officer Stutson noticed several open bottles of beer in the center console between the two front seats, although he could not tell whether the bottles contained any beer.[2] Hill opened the driver's side door and said "hello" to the officers. Officers Stutson and Hoffman then noticed a twelve-pack of beer in the back seat, with some sealed bottles and some open bottles, although again they could not tell whether the open bottles contained beer. Officer Stutson asked Hill what he had put underneath the driver's seat, and Hill replied, "Nothing." Officer Stutson then asked Hill to step out of the vehicle, and Hill did so. Officer Stutson proceeded to tell Hill that Vail had a law against open alcohol containers and asked Hill if he would consent to a search of the vehicle. Hill responded that he would not give his consent to a search.

Nevertheless, Officer Stutson began to search the vehicle. The front driver's side door was open and Officer Stutson leaned into the vehicle, checking underneath the lip of the front seat. As he did so, Officer Stutson saw a compact disc (CD) case lying flat on the floorboard. On top of the CD case were three lines of a white powdery

---

1. The types of crimes regularly occurring on concert nights included breaking into vehicles, drug usage, open alcohol containers, fights, vandalism, graffiti, and other problems associated with large crowds.

2. The Vail Municipal Code provides that "[i]t is unlawful for any person to possess ... in or upon any ... public parking lot in the town any malt, vinous, or spirituous liquors in any container of any kind or description which is not sealed or upon which the seal is broken." Vail Municipal Code § 9.32.010 (1988).

substance, which Officer Stutson believed to be cocaine. Officer Stutson then asked the two other passengers to step out of the vehicle, which they did. As they exited the vehicle, Officer Stutson observed a rolled up dollar bill on the floorboard. Moreover, at some time around the search of the vehicle, Officer Hoffman asked Hill to take out the contents of his pockets and Hill did so. Consequently, Hill took out of his pocket a small plastic bag containing a small amount of marijuana.

Officer Stutson subsequently advised Hill of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which Hill waived. Hill stated that the white powdery substance was cocaine and that it belonged to him. After Hill was transported to the police department, Officer Stutson finished searching the vehicle and found a razor blade with a small amount of white powdery substance on it. Officer Stutson thus took into evidence the CD case, the cocaine, the clear plastic bag with marijuana inside, the razor blade, and the rolled up dollar bill.

Hill was later charged with possession of a controlled substance (cocaine) and possession of less than one ounce of marijuana. He was not charged for violation of the open alcohol container law. On July 23, 1996, the trial court conducted a hearing to consider Hill's motion to suppress evidence obtained as a result of the search. The trial court concluded that Officers Stutson and Hoffman did not have probable cause to arrest or search Hill at the time of the search.

## II.

In resolving the case before us, we must first determine whether Officers Stutson and Hoffman properly initiated contact with Hill by approaching his vehicle.

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that law enforcement personnel may, in compliance with the Fourth Amendment, conduct brief investigatory stops based on reasonable suspicion. *Id.* at 30–31, 88 S.Ct. at 1884–85. Additionally, the Court stated that some encounters between the police and citizens do not trigger Fourth Amendment protections:

[N]ot all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

*Id.* at 19 n. 16, 88 S.Ct. at 1879 n. 16. Hence, the United States Supreme Court has held that law enforcement officers do not implicate the protections afforded by the Fourth Amendment by merely approaching an individual on the street or in another public place. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983). Moreover, the fact that an officer identifies himself as a police officer, without more, does not convert the encounter into a constitutionally protected seizure. *Id.* Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would believe he is not free to leave if he does not respond, one cannot say that questioning results in a detention under the Fourth Amendment. *INS v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984).

Colorado case law is consistent with the United States Supreme Court's decisions and recognizes three general categories of encounters between police officers and citizens: (1) arrests; (2) investigatory stops; and (3) consensual interviews. *People v. Johnson*, 865 P.2d 836, 842 (Colo.1994). Although arrests and investigatory stops implicate the protections of Article II, Section 7, of the Colorado Constitution and the Fourth Amendment of the United States Constitution, consensual interviews do not. *Id.* Consensual interviews are encounters "in which no restraint of the liberty of the citizen is implicated, but the voluntary cooperation of the citizen is elicited through non-coercive questioning." *Id.* (quoting *People v. Trujillo*, 773 P.2d 1086, 1089 (Colo.1989)). As we stated in *People v. Thomas*, 839 P.2d 1174 (Colo.1992):

The test for determining if the encounter is a consensual one is whether a reasonable person under the circumstances would be-

lieve he or she was free to leave and/or to disregard the official's request for information.

*Id.* at 1177–78; *see also People v. T.H.,* 892 P.2d 301 (Colo.1995).

In *Johnson,* two police officers observed the defendant, who was carrying a tweed bag and a pillowcase stuffed with clothing, running down an airport concourse toward a departure gate. The officers continued to observe the defendant as he used a telephone near the departure gate. After completing the telephone call, the defendant entered the line to board the aircraft for his flight. While the defendant was standing in line, the two officers approached him, identified themselves as law enforcement officers, and proceeded to ask him several questions, including whether he was carrying any narcotics or large sums of money. When the defendant replied in the negative, the officers asked for consent to search his bags, and the defendant gave his consent. We held in *Johnson* that, "[l]eaving aside the inherent pressure felt by any citizen to cooperate with a law enforcement officer," the circumstances of that case were not so intimidating as to constitute a Fourth Amendment seizure. *Id.*

■ In the current case, Officer Stutson merely approached Hill, then asked Hill what he had put underneath the driver's seat, to which Hill replied, "Nothing." These limited circumstances indicate that the initial encounter between Hill and Officer Stutson constituted a consensual interview which did not implicate Fourth Amendment protections. The police contact in this case, which involved fewer questions and lasted a shorter period of time than that in *Johnson,* did not implicate any restraint on Hill's liberty. Instead, Officer Stutson elicited Hill's voluntary cooperation through non-coercive questioning. Leaving aside any inherent pressure Hill may have felt to cooperate with Officer Stutson, the circumstances of this encounter do not appear so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave.

We therefore conclude that the initial encounter between Hill and Officer Stutson was a consensual interview which did not implicate Fourth Amendment protections. However, when Officer Stutson began to search Hill's vehicle without his consent, the officer's actions no longer constituted a consensual interview. Rather, Officer Stutson's actions constituted a warrantless search requiring probable cause.

III.

■ We now turn to the issue of whether Officer Stutson had probable cause to search Hill's vehicle. The United States and the Colorado Constitutions provide that citizens have a right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, § 7; *People v. Moore,* 900 P.2d 66, 70 (Colo.1995). Our constitutions also require that searches and seizures be made only pursuant to a warrant based upon probable cause and supported by oath or affirmation. *People v. Thompson,* 185 Colo. 208, 212, 523 P.2d 128, 131 (1974).

■ Generally speaking, warrantless searches violate constitutional guarantees because they are presumptively unreasonable. *Moore,* 900 P.2d at 70. However, there are exceptions to the warrant requirement, including the automobile exception, which allows police officers to conduct a warrantless search of an automobile if they have probable cause to believe that the automobile contains evidence of a crime. *Id.* Police officers have probable cause to search a motor vehicle if they have a reasonable basis for believing that the area being searched contains contraband or evidence of criminal activity. *Id.* Under the automobile exception, as long as the police have probable cause to search an automobile, they may also search containers within the automobile that might contain the object of their search. *Id.*

■ In the case before us, although Hill's vehicle was searched without a warrant, the automobile exception to the warrant requirement applies because Officer Stutson had probable cause to believe that Hill's vehicle contained evidence of a crime.[3] When the

---

**3.** The trial court found that the automobile exception to the warrant requirement did not apply in this case because at the time of the search, Hill's vehicle was only being used as a place to

officers approached Hill's vehicle, they observed open beer bottles in the vehicle's center console and a partially open twelve-pack of beer in the vehicle's back seat. These open bottles gave the officers probable cause to believe that the open alcohol container law had been violated, even if they had not ascertained whether the bottles actually contained alcohol.[4]

Based on the officers' probable cause to believe that the ordinance had been violated, Officer Stutson had probable cause to search Hill's vehicle to ascertain whether the ordinance had in fact been violated and to gather evidence of a violation. Officer Stutson's search could properly include the area underneath Hill's seat because the officer had a reasonable basis for believing that this area contained additional open alcohol containers. Officer Stutson thus had probable cause to search Hill's vehicle because he had probable cause to believe that Hill had violated Vail's ordinance prohibiting open alcohol containers.

### IV.

■■■ Hill argues that the search in this case was improper because Officer Stutson's motive in searching the vehicle was to determine what Hill had put underneath his seat, not to gather evidence of the municipal code violation.

The United States Supreme Court has held that otherwise lawful conduct by law enforcement officers is not made illegal or unconstitutional merely because the officers' subjective intent is illegitimate. *Whren v. United States,* — U.S. ——, ——, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). In *Whren,* the Supreme Court rejected the proposition that pretextual ulterior motives

could invalidate police conduct justified by probable cause to believe that a violation of law has occurred. *Id.* at ——, 116 S.Ct. at 1773. Likewise, we have required an objective standard for determining probable cause. *People v. Gouker,* 665 P.2d 113, 117 (Colo.1983). We have held that the objective standard makes it unnecessary to engage in a subjective analysis of police officers' motives for their otherwise lawful conduct. *People v. Thompson,* 793 P.2d 1173, 1176 (Colo.1990).

Hill's argument that Officer Stutson improperly searched his vehicle based on illegitimate motives fails because once Officer Stutson had probable cause to search Hill's vehicle based on the open alcohol container violation, any illegitimate motive did not invalidate the otherwise lawful search supported by probable cause. The objective standard we utilize to determine whether Officer Stutson had probable cause to conduct the search makes it unnecessary to engage in a subjective analysis of the officer's motives for the lawful search.

### V.

Based on the circumstances of this case, we hold that the police officers permissibly approached the defendant's vehicle without implicating the Fourth Amendment. We also hold that the officers had probable cause to search the defendant's vehicle. We therefore reverse the trial court's ruling suppressing (a) evidence of controlled substances found in the defendant's possession and (b) statements made by the defendant subsequent to the search.

---

sit. The trial court's conclusion is contrary to prior holdings of both the United States Supreme Court and this court. In *Carroll v. United States,* 267 U.S. 132, 153–56, 45 S.Ct. 280, 285–86, 69 L.Ed. 543 (1925), the United States Supreme Court established that a warrantless search of a vehicle is permissible if: (1) there is probable cause to believe that the vehicle contains evidence of a crime, and (2) it is likely that due to exigent circumstances, the vehicle will be unavailable by the time a warrant is obtained. Likewise, we have held that the automobile exception to the warrant requirement applies to a

search and seizure of a parked automobile where the automobile is still mobile and, if not seized, could be driven away by the defendant. *People v. Thiret,* 685 P.2d 193, 202 (Colo.1984). In the current case, Hill's vehicle was still mobile at the time of the search and therefore could have been driven away. As such, its use as a place to sit did not remove it from the reach of the automobile exception.

4. Vail's open alcohol container law indicates that the ordinance is violated when an open container actually contains alcohol.