**The PEOPLE of the State of Colorado,**
Plaintiff–Appellant,

v.

**Jeffrey Glen PADGETT, Defendant–Appellee.**

No. 96SA420.

Supreme Court of Colorado,
En Banc.

Feb. 24, 1997.

Robert R. Gallagher, Jr., District Attorney, Eighteenth Judicial District, James C. Sell, Chief Deputy District Attorney, Michael Spear, Deputy District Attorney, Englewood, for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, David G. Smith, Deputy State Public Defender, Englewood, for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

The People, pursuant to C.A.R. 4.1 and section 16–12–102(2), 8A C.R.S. (1996 Supp.), bring this interlocutory appeal challenging the order of the trial court suppressing evidence of a controlled substance, marihuana, found on the defendant.[1] The trial court determined that the police officers did not have a reasonable and articulable basis in fact to make the investigatory stop, nor was there sufficient attenuation between the initial illegal stop and the discovery of the evidence. We agree and affirm the trial court's suppression order.

## I.

At approximately 1:50 a.m. on January 18, 1996, Police Officer David Straley (Officer Straley) and Reserve Officer Todd Cope (Officer Cope) were on routine patrol near the 3800 block of South Lowell Boulevard in Sheridan. In the past, there had been a significant amount of criminal mischief and criminal trespass in this area. The officers observed two individuals walking along the sidewalk. There had been blizzard-like conditions several hours before, leaving the streets and sidewalks snowpacked and icy. As they crossed the street, one of the men stumbled. As the officers in the police vehicle approached the two men, one of the men slowed down and eventually stopped, while the other, Jeffrey Padgett (Padgett), appeared to begin walking more rapidly away from the officers.

The officers exited their vehicle. Officer Straley called out to Padgett, stating, "Excuse me, sir, I need to speak with you for just a moment, could you came [sic] back over to this area." Padgett continued walking. After Officer Straley called out a second time, Padgett slowed his pace and reluctantly walked back to where the officers were. Padgett immediately asked Officer Straley why the officers had contacted them. Officer Straley responded that he wanted to see if they were okay. He also informed them that there had been several crimes in the neighborhood[2] and he wanted to find out what they were doing. At that point, Officer Straley asked the pair for identification, which was provided as requested. The officer asked both men where they were coming from and where they were going. They responded that they were coming from the corner bar and were on their way home.

Officer Straley then instructed Officer Cope to check with the Colorado Crime Information Center (CCIC) to see if there were any outstanding arrest warrants on these two individuals. While the warrants check

---

1. Defendant was charged with a class 5 felony, possession of eight ounces or more of marihuana, pursuant to § 18–18–406(4)(b)(I), 8B C.R.S. (1996 Supp.).

2. However, at the suppression hearing, Officer Straley testified that he was not aware of any criminal activity in the area that morning or the previous evening before he initiated the encounter with the two men.

was in progress, which took between four to fifteen minutes to complete, Padgett repeatedly inquired why he was being detained and stated that he wanted to go home. Officer Straley responded that both men could leave if they did not have any warrants. Within a few minutes the officers got a response from dispatch stating that, as to Padgett, there was a "Code 6–F," indicating the existence of possible warrants.[3]

At this point, Padgett began to run. Officer Straley ordered Padgett to stop and chased him. Officer Cope was also in pursuit. Padgett ran approximately fifty yards before he stumbled and fell forward. Officer Straley caught up to him, handcuffed, and arrested him. After walking Padgett back to the patrol car, Officer Straley conducted a pat down search. He felt a large hard object tucked underneath Padgett's shirt and removed it. This object was a large plastic bag containing a brick of marihuana. Continuing the pat down search, Officer Straley found another brick of marihuana in Padgett's right front pocket. At this point, Officer Straley received confirmation that Padgett did have arrest warrants outstanding.

After Padgett was placed in the police car, Officer Cope attempted to return the identification cards, but could not find them. He searched the area where Padgett had been caught after his short flight. He found a lighter on the ground and, looking under a bus bench, found another package of marihuana.

Padgett was taken to the Sheridan Police Department, processed through the arrest procedure, interviewed, and then turned over to the Arapahoe County Detention Facility for custody on the outstanding warrants. On March 26, 1996, Padgett was charged by Felony Complaint and Information with possession of eight ounces or more of marihuana. On September 18, 1996, Padgett filed a motion to suppress the evidence, asserting the stop was illegal because police officers did not have a reasonable and articulable basis in fact to make the stop. At the conclusion of a hearing, held on November 5 and 6, 1996, the district court granted the suppression order, finding that under the totality of the circumstances the officers lacked a reasonable and articulable basis for the stop.

## II.

We address three issues advanced by the prosecution: whether the contact between the officers and Padgett was consensual; whether the officers had a reasonable articulable suspicion that Padgett was committing, had committed, or was about to commit a crime; and whether there was sufficient attenuation between the initial conduct of the officers and the subsequent discovery by the officers of incriminating evidence.

■ Encounters between police officers and citizens in the context of suppression order cases are of three types: (1) consensual interviews; (2) investigative stops; and (3) arrests. *See People v. Thomas,* 839 P.2d 1174, 1177 (Colo.1992). Investigative stops and arrests are seizures and therefore implicate Fourth Amendment protections. *See People v. Hill,* 929 P.2d 735, 738–39 (Colo. 1996). A consensual interview between a citizen and law enforcement personnel is not subject to Fourth Amendment protection. *See id.* Here, we must determine whether the encounter between Padgett and the police was consensual and, if not, whether a lawful investigatory stop occurred.

## A.

■ Consensual interviews are encounters "in which no restraint of the liberty of the citizen is implicated, but the voluntary cooperation of the citizen is elicited through non-coercive questioning." *People v. Trujillo,* 773 P.2d 1086, 1089 (Colo.1989); *see also Thomas,* 839 P.2d at 1177. In *Thomas,* we stated:

> The test for determining if the encounter is a consensual one is whether a reasonable person under the circumstances would believe he or she was free to leave and/or to disregard the official's request for information.

839 P.2d at 1177–78; *see also Hill,* 929 P.2d at 738–39. To effect a seizure, the officer, "by means of physical force or show of au-

---

**3.** Officer Straley testified that a "Code 6–F" does not indicate a confirmed warrant.

thority," must in some way restrain the liberty of a citizen. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). Taking into account all of the circumstances surrounding the encounter, a consensual encounter is negated if "the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. at 437, 111 S.Ct. at 2387 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569, 108 S.Ct. 1975, 1977, 100 L.Ed.2d 565 (1988)).

■ Contrary to the prosecution's assertion that the encounter between police and Padgett was a consensual interview, we conclude that the trial court did not err in finding and concluding that Padgett was not free to leave and that this encounter was not consensual in nature. *See People v. Hutton*, 831 P.2d 486, 489 (Colo.1992) (when the trial court's findings are sufficient and adequately supported by evidence in the record, they will not be disturbed on appeal). Officer Straley called out to Padgett but he continued walking. Not until Officer Straley called out to him a second time, did Padgett slow his pace and walk back to the officers. An individual's attempt to avoid coming into contact with a police officer does not, without more, justify an investigative detention of the individual. *See People v. Rahming*, 795 P.2d 1338, 1342 (Colo.1990).

■ The officers informed Padgett that he could not leave until an arrest warrants check was run on him: "And I told them that I would have them on their way if they didn't have any warrants." A reasonable person under these circumstances would have construed the officer's statement as an instruction to stay. Padgett was not free to depart unless and until the officers told him he could leave. A consensual encounter consists of voluntary cooperation by an individual who must be "free to leave at any time during such an encounter." *Thomas*, 839 P.2d at 1177. Otherwise, he is seized within the meaning of the Fourth Amendment. *See id.*

In *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983), the Court stated that police officers do not "violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions [or] by putting questions to him if the person is willing to listen." Here, Padgett was called back to where the officers were. He immediately asked the officers why he was being contacted and stated his desire to leave.

Officer Straley testified that he advised Padgett that he wanted to see if the two men "were okay." But he also testified that there had been several crimes in the neighborhood, and so he wanted to find out what they were doing, where they were going, and where they were coming from. He therefore asked the men for identification and then instructed Officer Cope to check with CCIC for outstanding warrants. During this encounter, Padgett stated repeatedly that he wanted to go home. Officer Straley advised Padgett that he "would have them on their way if they didn't have any warrants."

■ An unconfirmed arrest warrant is not sufficient to justify a seizure. *See People v. O'Hearn*, 931 P.2d 1168, 1174 (Colo.1997). We agree with the trial court that an investigatory stop, not a consensual interview, occurred here. Padgett did not voluntarily cooperate with the officers, *see Thomas*, 839 P.2d at 1177, nor was he "at liberty to ignore the police presence and go about his business," *Florida v. Bostick*, 501 U.S. at 437, 111 S.Ct. at 2387. Under the totality of the circumstances, the encounter between police and Padgett was not a consensual interview.

## B.

■ Next, we must determine whether the trial court erred in determining that Officers Straley and Cope did not have a reasonable suspicion sufficient to justify the investigatory stop. Before making an investigatory stop, an officer must have an articulable and specific basis in fact for suspecting that the individual is committing, has committed, or is about to commit a crime. *See People v. Contreras*, 780 P.2d 552, 555 (Colo.1989). For an investigatory stop to be constitutionally valid, three conditions must exist:

(1) the officer must have a reasonable suspicion that criminal activity has occurred,

is taking place, or is about to take place; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose.

*People v. Sutherland*, 886 P.2d 681, 686 (Colo.1994); *see also People v. In re D.F.*, No. 96SA217, slip op. at 6, —— P.2d ——, —— (Colo. Feb.18, 1997).

■ To justify an investigatory stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). In determining whether an investigatory stop is valid, a court must take into account the facts and circumstances known to the officer at the time of the intrusion. *See People v. Rahming*, 795 P.2d 1338, 1341 (Colo.1990) (facts uncovered after a chase begins are not relevant to determining if reasonable suspicion existed).

Here, the facts and circumstances known to the officer at the time of the intrusion were: (1) it was 1:50 a.m.; (2) criminal mischief and car break-ins had recently occurred in the neighborhood, though none had been reported that morning or the previous evening; (3) the streets and sidewalks were snowpacked and icy; (4) two men were walking; and (5) one of them slipped. These facts do not rise to the level of an articulable and specific basis in fact to suspect that the two men were committing, had committed, or were about to commit a crime.

We agree with the trial court that there does not appear to be anything unusual in an individual slipping on an icy sidewalk. In support of their argument that the officers were justified in stopping Padgett, the prosecution places great weight upon the area's reputation for criminal activity. However, we cannot "justify a stop based solely on the reputation of past criminal activity in a locality." *People v. Greer*, 860 P.2d 528, 531–32 (Colo.1993). As we said in *People v. Rahming*, 795 P.2d 1338 (Colo.1990), " '[a] history of past criminal activity in a locality does not justify suspension of the constitutional rights of everyone, or anyone, who may subsequently be in that locality.' " 795 P.2d at 1343

(quoting *People v. Aldridge*, 35 Cal.3d 473, 198 Cal.Rptr. 538, 540–41, 674 P.2d 240, 242 (1984)).

At the suppression hearing, Officer Straley testified on cross-examination that he had no specific and articulable basis in fact to suspect that Padgett was engaging in, had engaged in, or was about to engage in criminal activity:

Q  And is it fair to state at that time ... you had no specific facts known to you that Mr. Padgett was engaged in criminal activity; is that correct?

A  Correct.

Q  Thank you. You had no specific and articulable basis in fact known to you that Mr. Padgett was at that present time engaged in criminal activity, correct?

A  That's correct.

Q  Or that he was about to engage in criminal activity, correct?

A  Correct.

Q  But it was 2:00 in the morning—or 1:50 in the morning, and you wanted to find out what they were doing, correct?

A  Yes.

Q  And clarify one last thing before we move on ... prior to stopping Mr. Padgett, you had no criminal activity related to Mr. Padgett or anyone else, right, in that area?

A  Excuse me? In that area that night?

Q  Yes.

A  That's correct.

Officer Straley had a suspicion that "something didn't look right." A police "officer's unarticulated hunch that a criminal act has occurred, however, is not sufficient to support an investigatory stop." *People v. Greer*, 860 P.2d 528, 530–31 (Colo.1993); *see also Rahming*, 795 P.2d at 1341 (officer must have more than inchoate or unparticularized suspicion or hunch).

In *People v. Garcia*, 789 P.2d 190, 191 (Colo.1990), the officers, acting on an anonymous tip, observed a man enter a brown station wagon at 1:10 p.m. and drive away. The officers stopped the car, asked for and received permission to search the car. The search revealed an ounce of cocaine under

the hood of the car. *See id.* Under the circumstances, we held that the officers lacked a specific and articulable basis in fact to suspect that the defendant had engaged in, was engaging in, or was about to engage in criminal conduct. *Id.* at 193.

Here, the facts were that a citizen slipped on the ice coming out of a neighborhood bar. Instead of letting the individuals proceed home, they were halted, under protest, for an identification and warrants check. In *Michigan v. Chesternut,* 486 U.S. 567, 569, 108 S.Ct. 1975, 1977, 100 L.Ed.2d 565 (1988), when the defendant saw a marked police cruiser engaging in routine patrol duties, he started to run and commenced to discard a number of packets from his right-hand pocket as the cruiser began to follow him. Under these facts, the Court held that the police conduct "would not have communicated to the reasonable person an attempt to capture or otherwise intrude upon respondent's freedom of movement." *Id.* at 575, 108 S.Ct. at 1980. In contrast to the circumstances here, no command to halt or attempt to control the direction or speed of defendant's movement was involved in *Chesternut. See id.* Padgett's flight after the investigatory stop was initiated, cannot be utilized as a rationalization to justify the stop. The articulable facts which justify the stop must preexist. *See People v. In re D.F.,* No. 96SA217, slip op. at 17, at ——; *People v. Bates,* 190 Colo. 291, 294, 546 P.2d 491, 493 (1976).

Under the totality of the circumstances, the facts known to the officers at the time of the intrusion did not satisfy the threshold constitutional test for reasonable suspicion.

### C.

The People argue that there was sufficient attenuation between the initial illegal stop by the police officers and the discovery of the evidence, so as to dissipate any possible taint. We disagree.

The exclusionary rule applies to both the "illegally obtained evidence itself" and "fruit of the poisonous tree" which is "any other evidence derived from the primary evidence." *People v. Schoondermark,* 759 P.2d 715, 718 (Colo.1988). Three exceptions, independent source, inevitable discovery, and attenuation, have been carved out of the "fruit of the poisonous tree" doctrine. *See id.* at 718. It is the third exception, attenuation, that the prosecution seeks to invoke.

The attenuation doctrine allows tainted evidence to be admitted "if the prosecution can show that the connection between the initial illegality and the evidence has become so attenuated as to dissipate the taint." *Id.* In *Wong Sun v. United States,* the Supreme Court stated that, in making this determination, we must ask, "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality *or instead by means sufficiently distinguishable to be purged of the primary taint."* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) (emphasis added).

In *People v. Thomas,* we determined that "in order to prevail in its attempts to have the suppression order overturned, the prosecution must 'establish that the challenged evidence was obtained from an independent source, or that the connection between the initial illegality and the evidence has become so attenuated as to dissipate the initial taint.'" 839 P.2d at 1180 (quoting *People v. Lee,* 630 P.2d 583, 590–91 (Colo. 1981)). The burden is on the prosecution and, if not met, the evidence must be suppressed. *See id.* at 1180.

As we have said repeatedly, the trial court's findings of fact will not be disturbed on appeal if there is adequate support for them in the record. *See People v. Schrader,* 898 P.2d 33, 36 (Colo.1995).

The prosecution cites. *People v. Hillyard,* 197 Colo. 83, 85, 589 P.2d 939, 941 (1979), for the proposition that discovering the existence of an arrest warrant may be an intervening attenuating circumstance. However, we question whether our determination in *Hillyard,* that sufficient attenuation existed under those facts, was a correct conclusion. Moreover, the facts and circumstances here are distinguishable from those in *Hillyard.* Here, as opposed to *Hillyard,* the officers had not confirmed that an arrest warrant existed for Padgett; rather, they had only

received a code indicating the possibility of a warrant. Officer Straley testified that a "Code 6–F" does not indicate a confirmed warrant. More importantly, the evidence which the trial court suppressed here was obtained directly as a result of the illegal investigatory stop in temporal and physical proximity to the stop without sufficient intervening time and circumstances to carry the prosecution's burden of proof to demonstrate dissipation of the taint. *See McCall v. People,* 623 P.2d 397, 404 (Colo.1981) (the temporal proximity of the arrest and the discovery of the evidence is to be taken into account).

The temporal and geographical proximity of Padgett's stop and subsequent arrest to the discovery of the evidence is glaring. The officers had no basis in fact to make an investigatory stop of Padgett. When he tried to leave, the officer directed him not to go. After providing his identification and answering questions about his activities, his comings and goings that night, he was again told he could not leave until after a warrants check was performed. He was handcuffed and arrested before the warrant was confirmed. The entire encounter took place within four to fifteen minutes. Thus, the record supports the trial court's findings and conclusion that there was not sufficient attenuation between the initial illegality and the subsequent seizure.

### III.

Accordingly, we conclude that Padgett was subjected to an investigatory stop in violation of the Fourth Amendment and there was insufficient attenuation between the initial illegality and the discovery of the evidence. We affirm the trial court's suppression order and remand for further proceedings consistent with this opinion.

VOLLACK, C.J., dissents, and KOURLIS, J., joins in the dissent.

Chief Justice VOLLACK dissenting:

The majority affirms the district court's order suppressing evidence of a controlled substance found on the defendant, Jeffrey Padgett (Padgett). The majority determines that the officers' initial contact with Padgett constituted an unlawful investigatory stop which was not supported by reasonable suspicion that Padgett was engaged in criminal activity. I dissent because I believe that the officers' initial contact with Padgett did not constitute an investigatory stop but instead constituted a permissible consensual encounter that did not rise to the level of a Fourth Amendment seizure. I would therefore reverse the district court's order suppressing the evidence obtained in this case.

### I.

On January 18, 1996, Officer David Straley (Officer Straley) and Reserve Officer Todd Cope (Officer Cope) were on routine patrol in an area of Sheridan, Colorado, that has a history of criminal mischief, car burglaries, criminal trespass, and other criminal problems. At approximately 1:50 a.m., during a time of minimal foot traffic, the officers observed two individuals crossing the street. One of the individuals stumbled, which caught Officer Straley's attention. The two individuals apparently observed the officers' patrol car approaching them, and one of them, later identified as William Glaze (Glaze), stopped while the other one, later identified as Padgett, continued to walk away from the officers.

Officer Straley then called out to Padgett: "Excuse me, do you have a second? Can I talk to you?" Padgett continued to walk, so Officer Straley called out the same questions again. Padgett then slowed down and stopped to talk to the officers. The officers asked Padgett and Glaze for their identification and checked the Colorado Crime Information Center (CCIC) to determine if there were any outstanding arrest warrants for the two men. While the CCIC check was in progress, Padgett asked the officers two or three times why they had contacted him. Officer Straley responded that the officers wanted to see if Padgett and Glaze were all right, and asked what they were doing. Padgett told the officers that he and Glaze were coming from a nearby bar and that they were on their way home.

A few minutes later, the officers received a response from dispatch that there was a "Code 6–F" for Padgett, indicating the possi-

ble existence of outstanding felony warrants for his arrest. At this time, Padgett began to run away from the officers. Officer Straley ordered Padgett to stop, but Padgett did not do so. Officer Straley and Officer Cope then chased Padgett until they were able to catch up with him. Officer Straley restrained Padgett and conducted a pat-down search. While conducting the pat-down search, Officer Straley felt a large hard object underneath Padgett's shirt, which the officer believed may have been a weapon. Upon removing the object, Officer Straley discovered that it was a large plastic bag containing a brick of green, leafy substance later identified as marijuana. Officer Straley continued the pat-down search and discovered another brick of marijuana on Padgett's person. The officers then received confirmation that there were outstanding warrants for Padgett's arrest.

## II.

The majority holds that the initial contact between the officers and the defendant in this case constituted an investigatory stop which implicated the protections of the Fourth Amendment. I disagree.

The United States Supreme Court has held that law enforcement officers do not implicate the Fourth Amendment by merely approaching an individual on the street or in another public place. See *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983). Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would believe he is not free to leave, one cannot say that questioning results in a detention under the Fourth Amendment. See *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762–63, 80 L.Ed.2d 247 (1984).

Consistent with the United States Supreme Court, Colorado recognizes three general categories of encounters between police officers and citizens: (1) arrests; (2) investigatory stops; and (3) consensual interviews. See *People v. Hill,* 929 P.2d 735, 738–39 (Colo.1996). Although arrests and investigatory stops implicate the protections of Article II, Section 7, of the Colorado Constitution and the Fourth Amendment of the United States Constitution, consensual interviews do not. See *Hill,* 929 P.2d at 738–39.

Consensual interviews are encounters "in which no restraint of the liberty of the citizen is implicated, but the voluntary cooperation of the citizen is elicited through non-coercive questioning." *People v. Johnson,* 865 P.2d 836, 842 (Colo.1994) (quoting *People v. Trujillo,* 773 P.2d 1086, 1089 (Colo.1989)). The test for determining if the encounter is a consensual one is whether a reasonable person under the circumstances would believe he or she was free to leave and/or to disregard the official's request for information. See *People v. Thomas,* 839 P.2d 1174, 1177–78 (Colo.1992); *see also People v. Dickinson,* 928 P.2d 1309 (Colo.1996); *People v. T.H.,* 892 P.2d 301 (Colo.1995).

In *People v. Johnson,* two police officers observed the defendant running down an airport concourse toward a departure gate. While the defendant was standing in line to board the aircraft for his flight, the two officers approached him. The officers identified themselves as law enforcement officers and proceeded to ask him numerous questions, including whether he was carrying any narcotics or large sums of money. When the defendant replied in the negative, the officers asked to search his bags and the defendant gave his consent. We held in *Johnson* that "[l]eaving aside the inherent pressure felt by any citizen to cooperate with a law enforcement officer," the circumstances surrounding the initial encounter between the officers and the defendant were not so intimidating as to constitute a Fourth Amendment seizure. *Johnson,* 865 P.2d at 843.

In the current case, Officer Straley initially made contact with Padgett in a public street by asking, "Excuse me, do you have a second? Can I talk to you?" Officer Straley thus contacted Padgett by *asking* Padgett to talk to the officers, rather than *commanding* him to do so. Padgett responded by stopping and talking with the officers. The officers then performed a CCIC check which was an extension of the identification check

in this case.[1]  Officer Straley also proceeded to ask Padgett and his companion a few questions, which they voluntarily answered. Under the totality of the circumstances of this case, I believe that the encounter did not implicate any restraint on Padgett's liberty but instead involved Padgett's voluntary cooperation through non-coercive questioning. Leaving aside any inherent pressure Padgett may have felt to cooperate with the officers in this case, the initial encounter does not appear so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave.  I would therefore hold that the initial encounter between Padgett and the officers was a consensual interview which did not implicate Fourth Amendment protections.

### III.

Having concluded that the initial contact in this case was consensual, I now turn to the remainder of the encounter between Padgett and the officers.

To be valid, a warrantless arrest must be supported by probable cause. *See People v. Washington,* 865 P.2d 145, 147 (Colo.1994). Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to support a reasonable belief that a crime has been or is being committed by the person arrested. *See id.*  In determining whether there is probable cause to arrest, the totality of circumstances known to the officer at the time of arrest must be considered. *See id.*  As the term suggests, probable cause deals with probabilities, not certainties, and it is sufficient if the officer reasonably believed that the person arrested committed a crime. *See id.*

In the current case, the CCIC check revealed the possible existence of outstanding warrants for Padgett's arrest.  Although the officers had not yet confirmed this information, the possible outstanding warrants combined with Padgett's attempt to run away sufficiently provided the officers with a reasonable belief that Padgett had an outstanding arrest warrant.  Consequently, the officers had probable cause to chase, arrest, and conduct a patdown search of Padgett.

### IV.

The initial encounter between Padgett and the officers in the current case constituted a consensual interview rather than an investigatory stop.  The officers then obtained probable cause to arrest Padgett after they learned of possible warrants for his arrest and he ran away.  Once the officers had probable cause to arrest Padgett, they properly conducted a pat-down search and properly discovered the marijuana on his person. Therefore, I would reverse the district court's suppression of the marijuana.

I am authorized to say that Justice KOURLIS joins in this dissent.

---

1. Identification checks are a common and permissible part of consensual interviews.  *See, e.g.,* *People v. T.H.,* 892 P.2d 301 (Colo.1995); *People v. Johnson,* 865 P.2d 836 (Colo.1994).