The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

Richard MARTINEZ, Defendant–
Appellee.

No. 08SA317.

Supreme Court of Colorado,
En Banc.

Jan. 20, 2009.

Bill Thiebaut, District Attorney, Tenth Judicial District, Richard W. Dickerson, Deputy District Attorney, Pueblo, Colorado, Attorneys for Plaintiff–Appellant.

Daniel R. Casias, Pueblo, Colorado, Attorney for Defendant–Appellee.

Justice BENDER delivered the Opinion of the Court.

## Introduction

The prosecution brings this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), C.R.S. (2008), seeking to reverse the trial court's ruling suppressing evidence and statements taken by police officers obtained after the investigatory stop of the defendant. The trial court ruled that the defendant was detained without reasonable

suspicion that the defendant committed, was committing, or was about to commit a crime. We affirm.

The trial court made the following findings. Pueblo police received an anonymous tip that unidentified persons were using narcotics in the driveway of the house where the defendant was arrested. The responding officer could not corroborate the drug activity alleged by the caller. He received permission to enter the house for the limited purpose of speaking with the owner. Once inside, the officer observed neither evidence of drug activity nor other criminal activity by any person inside the house, including the defendant. The officer observed the defendant enter a bathroom in the house. He could see the defendant sitting on the toilet through the crack in the door. He told the defendant to finish and come out. After the defendant emerged from the bathroom, the officer ordered the defendant and the other occupants to a separate location inside the house and ran clearance checks on the defendant and the others to determine whether there were any outstanding arrest warrants. The defendant was not free to leave or disregard the officer's requests.

Thereafter, the police learned of an active warrant for the defendant and arrested him. A search of his person revealed controlled substances. The defendant then made incriminating statements both before and after he received a *Miranda* advisement.

■ Under these circumstances, we hold that the police subjected the defendant to an investigatory stop. The stop was not based on a reasonable suspicion of criminal activity and therefore constituted an unconstitutional seizure. Because the police learned the defendant's identity after he was seized, his subsequent arrest on the outstanding warrant was illegal, and the evidence found on his person and the incriminating statements he made after the arrest were derived from his illegal seizure and therefore are inadmissible. Hence, we affirm the trial court's order suppressing all evidence obtained after the investigatory detention. Because it was not raised by the prosecution in the trial court and therefore not addressed by the trial court, we do not consider whether either the discovery of the arrest warrant or the *Miranda* advisement purged the taint of the defendant's initial illegal detention.[1]

## Facts and Procedural History

The prosecution charged the defendant, Richard Martinez, with numerous felonies, including the possession of a controlled substance. The defendant sought to suppress the evidence seized from him and any and all incriminating statements he made to police officers.

At the suppression hearing, an officer of the Pueblo Police Department testified to the following facts. He was dispatched to a residence to investigate an anonymous call that parties were using narcotics in the driveway. The officer testified that the anonymous caller gave no information about how the caller obtained his or her information:

Q: You said the call that brought you to the house that morning was an anonymous call?

A: Yes, sir.

---

1. Our record review indicates the prosecution did not argue two additional grounds to the trial court to oppose Martinez's motion to suppress: Whether either the arrest warrant for Martinez or the *Miranda* advisement sufficiently attenuated the taint of Martinez's invalid detention. Consequently the trial court did not consider either issue in reaching its ruling. "It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal. This axiom applies with equal force to interlocutory appeals." *People v. Salazar*, 964 P.2d 502, 507 (Colo.1998) (internal citations omitted).

Recently, the California Supreme Court held that an outstanding arrest warrant discovered after an unlawful traffic stop can dissipate the taint of the illegal seizure, and cited numerous jurisdictions espousing this principle. *People v. Brendlin*, 45 Cal.4th 262, 85 Cal.Rptr.3d 496, 195 P.3d 1074 (Cal.2008). Our precedent reveals some tension concerning this issue. *Compare People v. Hillyard*, 197 Colo. 83, 84–86, 589 P.2d 939, 940–41 (1979) (indicating that the taint of the invalid stop was attenuated by the discovery of an arrest warrant under the circumstances in that case) *with People v. Padgett*, 932 P.2d 810, 816–17 (Colo.1997) (in dicta factually distinguishing *Hillyard* and questioning the *Hillyard* rationale). We neither address nor resolve the tension in these opinions and leave this issue to another day when raised appropriately.

Q: You had no idea who the source was and how reliable the information you got would be, correct?

A: Correct.

As police approached the residence, a late model car with a temporary tag quickly left the driveway. A white car with its door propped open remained in the driveway.

The officer stopped at the residence and talked with a woman inside the white car. She stated that she did not know who lived in the house or why her companion, the driver, was inside. The woman did not give any specific information about narcotics transactions. The officer testified that, while he found it suspicious the woman did not know anyone in the house or what her companion was doing inside, it did not suggest any criminal activity.

After talking with the woman, the officer knocked on the door of the house to speak with the owner, who answered and agreed to let the officer in to talk with him. Once inside, the officer saw someone go inside the bathroom. The officer went to the bathroom, cracked open the door, and saw the defendant, Richard Martinez, on the toilet. He told Martinez to finish and come out of the bathroom. After Martinez emerged from the bathroom, the officer directed him and the four other people who were in the house to one room. The officer testified that when he directed the defendant and others to a different part of the house, he had no reason other than the anonymous call to believe Martinez had engaged in illegal or suspicious activity:

Q: Other than the initial anonymous call, you had no reason to believe Mr. Martinez was engaged in any suspicious or illegal activity?

A: No, sir.

. . .

Q: What did you do when you saw him?

A: I let him finish in the bathroom. When he finished, we all went into the big room. It was the biggest room in the house. We went in there, so I could keep my eye on everyone and ran clearances.

Q: Up to that point, you had no reason to believe Mr. Martinez had been engaged in any illegal or suspicious activity?

A: No.

The police then ran clearance checks on those detained and determined that Martinez had an outstanding felony arrest warrant for a parole violation. He was arrested, and a search revealed controlled substances on his person.

A second officer, who arrived at the scene after the defendant's arrest, questioned Martinez and testified that Martinez admitted using cocaine. The officer then gave him a *Miranda* warning and Martinez made additional incriminating statements.

The trial court ruled that Martinez was detained, and not free to leave, when the officer directed Martinez to finish and come out of the bathroom, and then ordered him to another room where he ran a clearance check. At that point, the court found that the only information held by the officer relating to criminal activity was the report from the anonymous source, which it concluded was not enough to constitute reasonable suspicion that the defendant committed, was committing, or was about to commit any criminal offense. Accordingly, the court granted the defendant's motion to suppress the controlled substance seized incident to the arrest and incriminating statements made thereafter. The trial court reasoned that the evidence and statements were the result of the initial illegal detention.

On appeal, the prosecution challenges this ruling.

### Analysis

The Fourth Amendment of the United States Constitution protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. To determine whether the contact between Martinez and the police officers complied with Fourth Amendment standards, we briefly define and discuss the level of suspicion required for the police to initiate the three types of police-citizen contacts: consensual encounters, investigatory stops, and arrests.

■ In *People v. Thomas*, 839 P.2d 1174, 1177 (Colo.1992), we described a consensual encounter as "the voluntary cooperation of an individual to the non-coercive questioning by an officer...." Because the individual is free to leave, or alternatively, can disregard the officer's request for information during a consensual encounter, he is not "seized," and the Fourth Amendment protections against unreasonable searches and seizures do not apply. *Id.* at 1177–78; *see also Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

■■ Simply asking an individual to identify himself is within the bounds of a consensual encounter. *See People v. Paynter*, 955 P.2d 68, 75 (Colo.1998). However, when an individual reasonably infers that he cannot leave the area until the officer has the opportunity to check if the individual has any outstanding warrants against him, the contact is elevated to an investigatory stop or detention. *Padgett*, 932 P.2d at 814 (finding the police officer subjected the defendant to an investigatory stop where the officer told the defendant he could "be on [his] way if [he] didn't have any warrants").

■ A stop allows an officer temporarily to detain an individual for limited investigatory purposes such that he is not free to leave. *Terry v. Ohio*, 392 U.S. 1, 17–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Stone v. People*, 174 Colo. 504, 508–09, 485 P.2d 495, 497 (1971). When a stop involves more than a brief detention and questioning, it can become an arrest. *People v. Rodriguez*, 945 P.2d 1351, 1362 (Colo.1997).

■ Unlike consensual encounters, stops and arrests are seizures that trigger Fourth Amendment protections. *People v. Melton*, 910 P.2d 672, 676 (Colo.1996). Arrests must be justified by probable cause, i.e., information demonstrating that there is a fair probability the defendant committed, is committing, or is about to commit a crime. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A less rigorous standard is required to justify investigatory stops: the police must have a reasonable articulable suspicion that the defendant is involved in criminal activity. *Ala-*bama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *see also People v. Polander*, 41 P.3d 698, 703 (Colo.2001).

In *Polander*, we examined the extent to which information obtained from a source outside the police department could be relied upon to form reasonable suspicion. *Id.* at 703. *Polander* involved a tip from an unidentified caller reporting drug activity in his or her employer's parking lot. *Id.* at 700–01. We reasoned that a tip may contribute to reasonable suspicion where the totality of the circumstances indicates a minimal level of objective suspicion of criminal activity:

> An investigatory stop, based in part on information provided by someone other than the police, is therefore justified as long as the totality of the circumstances indicates that the police possess some minimal level of objective suspicion (as distinguished from a mere hunch or intuition) that the person to be stopped is committing, has committed, or is about to commit a crime.

*Id.* at 703 (citing *White*, 496 U.S. at 329–30, 110 S.Ct. 2412, and *Terry*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889).

In *Polander*, we cited two important, but not necessarily dispositive, factors to determine whether the totality of the circumstances test is met with respect to anonymous tips: (1) whether the person providing the information was telling the truth (his veracity), and (2) whether the way the person acquired the information furthers the belief that the information was accurate (his basis of knowledge). 41 P.3d at 702–04.

■ Anonymous tips come in different forms. First are tips from unidentified citizen informants, which can be sufficient to form reasonable suspicion because citizens are less likely to "fabricate information in return for immunity or other compensation." *People v. Lucero*, 182 Colo. 39, 43, 511 P.2d 468, 470 (1973) (finding unidentified citizens' descriptions of a robbery getaway vehicle to police officers on the scene adequate to stop the described car for investigatory purposes).

■ Second are tips where there is inadequate information to categorize conclusively an anonymous source as a citizen informant,

but where the source's information indicates that the informant made first-hand, contemporaneous observations and likely is not affiliated with the criminal activity. These tips can be sufficient to form reasonable suspicion. *See Polander*, 41 P.3d at 703–04 (finding the caller provided "significant information about both his or her veracity and basis of knowledge" where the dispatch log indicated the caller was a restaurant employee and observed occupants of a white service van passing a marijuana pipe back and forth in the restaurant's parking lot).

■ In contrast to the two tips described above, a truly anonymous tip is one not only where the caller fails to provide his or her name, has no known prior record of providing information, and there is nothing to suggest that the caller was a citizen informant, but also, unlike in *Polander*, nothing in the tip indicates that the caller is an unaffiliated bystander contemporaneously witnessing criminal activity. *See People v. Garcia*, 789 P.2d 190, 192 (Colo.1990) (distinguishing information from completely anonymous sources and unidentified citizen observers). Truly anonymous tips give the police no way to assess the caller's veracity or basis of knowledge, and, without more, these tips do not amount to reasonable suspicion. *See People v. Contreras*, 780 P.2d 552, 555 (1989); *Polander*, 41 P.3d at 703–04.

■ However, a completely anonymous tip can establish reasonable suspicion if it contains specific details corroborated by police observation. For example, reasonable suspicion exists where an anonymous tip predicts a suspect's pattern of activity, and the police corroborate the tip by observing the tip's forecasted activity. *E.g., People v. Villiard*, 679 P.2d 593, 596–97 (1984). Police observation of activity predicted by the anonymous source gives reason "to believe not only that the caller was honest but also ... well informed." *People v. George*, 914 P.2d 367, 371 (Colo.1996) (quoting *White*, 496 U.S. at 332, 110 S.Ct. 2412). Thus, when corroborated, tips containing predictive detail may strengthen both the veracity and basis of knowledge factors cited in *Polander*. *See* 41 P.3d at 702–04.

■ Not all tips accurately predicting a suspect's activities are sufficient to form reasonable suspicion. Tips containing not easily obtained, non-public details increase the likelihood that the informant has a special familiarity with the suspect, and thus a stronger basis for his or her knowledge. *White*, 496 U.S. at 332, 110 S.Ct. 2412; *see also Villiard*, 679 P.2d at 596–97 (finding corroboration of the name and description of the defendant, as well as fact that the defendant engaged in a particular sequence of events as predicted by the informant, sufficient to constitute reasonable suspicion).

On the other hand, "corroboration of a fact presumably known or knowable by everyone" may lack the quantity and quality of detail sufficient to establish reasonable suspicion. *George*, 914 P.2d at 371 (corroboration of an informant's tip that a van and another vehicle entered a parking lot and an altercation might occur was insufficient to form reasonable suspicion); *see also Garcia*, 789 P.2d at 193 (finding an anonymous caller's description of a car parked along an alley and the caller's prediction that a person would enter the car at 1:00 p.m. an inadequate basis for reasonable suspicion because corroboration by police was of an instance of commonplace activity).

■ Even if insufficiently detailed, a tip may be adequately corroborated if police directly observe the criminal activity alleged. For instance, reasonable suspicion existed when an anonymous caller reported that three juvenile males, one wearing a poncho and possibly carrying a BB rifle, were in the vicinity of a park. Upon arriving at the park, the officers observed three juveniles walking, one with a poncho. The officer observed one juvenile walking stiff-legged, as if concealing a weapon. This suspicious activity, when combined with the corroboration of other facts detailed by the caller, provided police reasonable suspicion to justify stopping the juveniles. *People v. D.F.*, 933 P.2d 9, 10–14 (Colo.1997).

### Application

■ Here, the trial court ruled that the police subjected Martinez to an investigatory stop when the officer directed him to come

out of the bathroom and then directed him into a separate room, and ran a clearance check to determine if he had any active arrest warrants. This ruling is consistent with our precedent. *See Padgett*, 932 P.2d at 814 (finding a police officer detained the defendant when the officer implied he was not free to leave until after the officer ran a warrant check). The homeowner's consent to enter the residence did not change the nature of the contact between Martinez and the officer. The owner's consent permitted the officer only to enter and talk with the owner about the anonymous call alleging drug activity. We have held that "consent, when given to enter [a home] for the purposes of inquiry, does not justify *otherwise impermissible searches and seizures." People v. Milton*, 826 P.2d 1282, 1285 (Colo.1992) (emphasis added); *cf. People v. Najjar*, 984 P.2d 592, 595 (Colo.1999) (noting a consensual search must be limited to consent actually given). Accordingly, we must examine whether the detention of the defendant was permissible under the circumstances of this case.

■ The prosecution concedes that the police detained Martinez, but nonetheless contends that the seizure was legal because the police did not need reasonable suspicion to stop him. This argument contravenes precedent of the United States Supreme Court and this court. As discussed *supra*, investigatory stops not based upon reasonable suspicion violate Fourth Amendment protections against unreasonable seizures. *See, e.g., Terry*, 392 U.S. at 30–31, 88 S.Ct. 1868; *Polander*, 41 P.3d at 703.

Accordingly, to determine the legality of the seizure, we examine whether reasonable articulable suspicion supported the defendant's detention. Here, the information provided to the officer dispatched to the residence came from a truly anonymous caller. The informant did not identify himself or herself to the police, nor did the informant disclose any information concerning his or her veracity or basis of knowledge. The tip gave vague details, with sparse information for police to corroborate and failed to provide any details as to the suspect's future behavior which, if corroborated, would indicate the caller had a special familiarity with the sus-

pect's criminal activity. *Compare Villiard*, 679 P.2d at 596–97 (finding the described defendant engaged in a particular sequence of events as predicted by the informant, sufficient to constitute reasonable suspicion).

The police saw nothing to corroborate the allegation that the defendant engaged or was engaging in criminal activity. Before detaining the defendant, the officer testified he had no reason to believe that the defendant was engaged in any suspicious or illegal activity.

Under these circumstances, we hold that the police subjected Martinez to an investigatory stop. The stop was not based on a reasonable suspicion of criminal activity and therefore constituted an unconstitutional seizure. Because the police learned Martinez's identity after he was seized, his subsequent arrest on the outstanding warrant was illegal, and the evidence found on his person and the incriminating statements he made after the arrest were derived from his illegal seizure and are therefore inadmissible. *See, e.g., Garcia*, 789 P.2d at 193–94; *see also Wong Sun v. United States*, 371 U.S. 471, 484–86, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

## Conclusion

We affirm the trial court's order suppressing all evidence obtained after Martinez's investigatory detention and return this case to the trial court.

Justice RICE dissents, and Justice EID joins in the dissent.

Justice RICE, dissenting.

The majority affirms the trial court's suppression of statements and evidence because it finds that the defendant was subject to an investigatory stop unsupported by reasonable suspicion. I believe the interaction between the defendant and the police was a consensual encounter that did not require reasonable suspicion. In addition, I believe that even if the interaction could be considered an illegal investigatory stop, the discovery of a warrant for Martinez's arrest justifies admission of the evidence. I therefore respectfully dissent.

## I. Facts

Pueblo police officers responded to an anonymous tip reporting drug activity in the driveway of a house. When the police officers arrived, two cars were parked in the driveway. One sped off upon the officers' arrival, and the other remained. A woman inside the remaining car told the officers that the driver of the car was inside, but she did not know why. The officers then knocked on the front door of the house, and were given permission by the owner to enter the house. Inside the house, the officers saw Martinez enter the bathroom. They waited for him to finish and then asked Martinez and everyone else in the house to move into a large room in order to run clearances on all of the individuals and assure there were no warrants out for their arrest. Martinez's clearance came back with a felony arrest warrant for a parole violation. He was arrested and searched, and the search revealed controlled substances. He admitted to using cocaine. After he was given a *Miranda* warning, he made additional incriminating statements.

## II. Consensual Encounters

The majority correctly states the standards for the three types of interactions between individuals and police officers—consensual encounters, investigatory stops, and formal arrests. Maj. op. at 1056–57. However, I disagree with the majority's conclusion that Martinez was subjected to an investigatory stop. I conclude instead that his interaction with the police constituted a consensual encounter. Because a consensual encounter does not trigger Fourth Amendment protections, I would reverse the trial court's suppression of the evidence and Martinez's statements.

A consensual encounter is one in which an individual voluntarily cooperates with a police officer asking non-coercive questions. *People v. Thomas,* 839 P.2d 1174, 1177 (Colo. 1992). The individual is not seized for purposes of the Fourth Amendment because he is free to leave at any time during the encounter and may ignore the officer's questions. *Id.* at 1177–78 ("The test for determining if the encounter is a consensual one is whether a reasonable person under the cir-

cumstances would believe he or she was free to leave and/or disregard the official's request for information."). For a consensual encounter to be transformed into an investigatory stop, "the officer, 'by means of physical force or show of authority,' must in some way restrain the liberty of a citizen." *People v. Padgett,* 932 P.2d 810, 813–14 (Colo.1997).

The majority glosses over the fact that the officers entered the house *with the owner's permission.* Officer Harris testified that the officers asked if they could come inside and whether anyone else was inside the house, and the homeowner said, "sure." At this point, the officers were legitimately on the premises pursuant to the homeowner's consent to enter. *See People v. Milton,* 826 P.2d 1282, 1286–87 (Colo.1992) ("Milton could have refused to open his front door and further could have refused to invite the officers to enter.").

Once inside the house, the officers moved all occupants of the house into the largest room and asked each individual to identify himself. Our precedent establishes that the Fourth Amendment permits police officers to ask individuals to move a short distance. *People v. Marujo,* 192 P.3d 1003, 1006 (Colo. 2008); *see also Florida v. Rodriguez,* 469 U.S. 1, 5–6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984) (holding that defendant was not seized when asked to move fifteen feet because, "requesting that a person move a short distance does not constitute a seizure."). In addition, we have held that a consensual encounter is not transformed into an investigatory stop merely because a police officer asks an individual to identify himself. *People v. Paynter,* 955 P.2d 68, 71 (Colo.1998). Under this court's precedent, the officers' actions in the house did not violate the defendant's Fourth Amendment rights.

The majority relies on *Padgett* for the proposition that "when an individual reasonably infers that he cannot leave the area until the officer has the opportunity to check if the individual has any outstanding warrants against him, the contact is elevated to an investigatory stop or detention." Maj. op. at 1057. However, in *Padgett,* the defendant repeatedly told the officer that he wanted to leave, and the officer refused to let him go

until the clearance check was complete. *Padgett*, 932 P.2d at 814. It was clear in that case that "Padgett did not voluntarily cooperate with the officers, nor was he at liberty to ignore the police presence and go about his business." *Id.* (internal quotations and citations omitted). No such exchange happened in this case. Martinez never told the officers that he wanted to leave, and he was never told that he had to wait for the clearance check to be completed. The encounter did not occur in Martinez's house, and he could have easily left with his companion in the car at any time.

Because I believe the interaction between Martinez and the police constituted a consensual encounter, I would reverse the trial court's suppression of evidence and statements obtained during the encounter.

### III. Discovery of Outstanding Warrant

Even if the encounter between Martinez and the police were properly considered an illegal investigatory stop, I would still reverse the trial court's suppression of evidence and statements. In my view, the officers' discovery of an outstanding warrant for Martinez's arrest sufficiently attenuates the taint of the unlawful investigatory stop to render the evidence and statements admissible.[1]

The Fourth Amendment prevents admission "not only of evidence obtained by means abridging constitutional rights, but also the 'fruits' of that evidence." *People v. Briggs*, 709 P.2d 911, 915 (Colo.1985). However,

> We need not hold that all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

*Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)

(internal quotation marks omitted). Evidence obtained after an illegal stop may be admissible, provided that the chain of causation between the illegal stop and the discovery of the evidence becomes attenuated or is interrupted by an intervening event. *United States v. Crews*, 445 U.S. 463, 471, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). Factors to be considered in determining whether there is sufficient attenuation to admit the evidence include "the voluntariness of the defendant's communications, the degree of police misconduct and any relevant intervening circumstances." *People v. Hillyard*, 197 Colo. 83, 85, 589 P.2d 939, 941 (1979).

We have confronted this issue within the context of an illegal traffic stop. *See id.* In *Hillyard*, we held that where a police officer discovered an outstanding arrest warrant for an individual whom he had illegally stopped, evidence seized during a search incident to arrest pursuant to the warrant was admissible. *Id.* at 86, 589 P.2d at 941. In contrast, we have held that where an individual was illegally stopped, told he could not leave until a clearance check was run, and handcuffed and arrested before the police officer discovered a valid warrant for his arrest, evidence obtained during a search incident to the arrest had to be suppressed. *Padgett*, 932 P.2d at 817.

In my view, the outstanding warrant for Martinez's arrest severed the causal connection between the initial encounter and the seizure of evidence. As was the case in *Hillyard*, the police here searched Martinez pursuant to a valid arrest warrant discovered during a routine clearance check. Unlike the officers in *Padgett*, the officers in this case did not arrest or handcuff Martinez until they discovered a valid warrant for his arrest. I believe the intervening circumstances caused by discovery of the arrest warrant rendered the suppressed evidence admissible.

### IV. Conclusion

I believe the interaction between Martinez and the police was a consensual encounter

---

1. The majority declines to address this argument because it was not specifically raised by the prosecution. Maj. op. at 1055, n. 1. I would decide the issue or, in the alternative, remand for the issue to be decided below.

that did not require reasonable suspicion. I would therefore reverse the trial court's suppression of the evidence and statements. In the alternative, even if the interaction could be characterized as an illegal investigatory stop, I would admit the evidence based on the intervening discovery of a valid warrant for Martinez's arrest. I therefore respectfully dissent.

I am authorized to state that Justice EID joins in this dissent.

