The PEOPLE of the State of Colorado, Plaintiff–Appellant

v.

Brandon C.A. EALUM, Defendant–Appellee.

No. 09SA71.

Supreme Court of Colorado, En Banc.

June 29, 2009.

Daniel H. May, District Attorney, Fourth Judicial District, Eugene Tiell, Deputy District Attorney, Doyle Baker, Deputy District Attorney, Colorado Springs, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Public Defender, Cynthia J. Jones, Deputy Public Defender, Colorado Springs, Colorado, Attorneys for Defendant–Appellee.

Justice BENDER delivered the Opinion of the Court.

### Introduction

The prosecution brings this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), C.R.S. (2008), seeking to reverse the trial court's ruling suppressing evidence and statements obtained by police officers in connection with the defendant's arrest for the possession of a controlled substance and drug paraphernalia. The trial court concluded that the police officers subjected the defendant to an illegal investigatory stop when they ran a check to ascertain whether the defendant had any outstanding arrest warrants.

On the day of his arrest, two police officers approached the defendant on the side of the road, and asked his permission to talk with him. The defendant consented, and gave his name to the officers, who then ran a warrant check. Shortly thereafter, one of the officers asked if the defendant had weapons or drugs on him; the defendant responded that he did not. The officer then asked if he could make sure, and the defendant responded, "I don't see why. I don't have anything." Without further direction from the officer, the defendant began to remove items from his pockets. Observing that the defendant was only selectively removing items, the officer asked the defendant to turn out the entire contents of his pockets. The defendant eventually revealed a pipe, which he stated was for smoking crack cocaine. A subsequent pat down search by police revealed a small amount of crack cocaine in the defendant's sock.

The trial court found no evidence, other than the warrant check, to support its conclusion that the police-citizen contact amounted to an investigatory stop. The trial court granted the suppression motion on the sole basis that the officers' request for the defendant's name and subsequent check for outstanding warrants, by itself, transformed the otherwise consensual encounter into an investigatory stop, which it found was not supported by reasonable suspicion of criminal activity.

We hold that the record does not support the trial court's conclusion that the mere act of checking for warrants transformed this

consensual encounter into a stop. Accordingly, we reverse the trial court's suppression order and remand for proceedings consistent with this opinion. Upon remand the trial court may, in its discretion, consider additional evidence to determine whether the defendant was not free to leave when the officers conducted the warrant check.

## I. Facts and Proceedings Below

At the suppression hearing, the arresting officers, Deputy Boarman and Deputy Young, testified to the following facts.

Late in the evening, the officers approached the defendant while on patrol in an unmarked car. Without turning on the car's emergency lights, the officers pulled over and crossed the street to contact the defendant, who was walking on the side of the road. The officers wore jeans, black t-shirts that said "Sheriff's Office" across the back, and displayed their badges in plain sight. Deputy Boarman asked the defendant if he could talk to him, and the defendant agreed. During their conversation, the defendant stated he was coming from a friend's house nearby, where he had gone to borrow a cell phone. The deputy asked the defendant if he had any identification. The defendant responded that he did not, but gave the officers his name and birth date. Deputy Young radioed back to determine whether the defendant had any outstanding warrants. None were found.

Deputy Boarman asked the defendant if he had any weapons on him. The defendant replied that he did not. The deputy asked the defendant if he had any pipes or drugs. The defendant stated he had none. The deputy asked whether he could search the defendant to make sure, and the defendant answered, "I don't see why. I don't have anything." Without further direction from the officers, the defendant began to selectively remove items from his pockets. Deputy Boarman then asked if the defendant would turn his pockets inside out and remove everything from the pockets. The defendant did so, and kept his right hand closed. The deputy asked the defendant to open his hand, and the defendant revealed a metal tube that he stated was a crack pipe. Deputy Boarman estimated that "a couple minutes" elapsed from the time the police initiated contact with the defendant to the discovery of the pipe.

The officers next conducted a pat down search of the defendant and located crack cocaine in the defendant's sock. Thereafter, the officers placed the defendant under arrest.

Prior to trial, the defendant sought to suppress evidence and statements obtained by the officers, alleging that the citizen-police contact at issue constituted an illegal stop that was not supported by a reasonable suspicion of criminal activity. They further alleged that the defendant did not consent to a search. In response, the prosecution argued that the entire police contact was a consensual encounter and not an investigatory stop, and thus that Fourth Amendment protections against illegal searches and seizures did not apply.

Following a suppression hearing, the court ruled that, if not for the warrant check, the encounter would have been consensual "even through the point of asking the Defendant in this case to remove the items from his pocket." The court found no factors present, other than the warrant check, to support the conclusion that a stop, rather than a consensual encounter, occurred. It noted that the overhead lights on the police car had not been turned on; only two officers were present; the officers acted in a non-threatening manner; the officers did not display weapons or physically touch the defendant; and the officers did not use language or tone of voice indicating that compliance with the officers' requests might be compelled. The court further found the defendant did not have to consent to removing the items from his pocket, and that he produced the pipe "voluntarily."

The trial court ruled that the warrant check transformed the otherwise consensual encounter into an investigatory stop. The court relied on two cases involving warrant checks, where this court held that the police contact at issue amounted to a stop. *People v. Martinez*, 200 P.3d 1053, 1058–59 (Colo. 2009); *People v. Padgett*, 932 P.2d 810, 814

(Colo.1997). Because it found the stop of the defendant was not supported by reasonable suspicion, the trial court suppressed the evidence seized and statements obtained after the warrant check, including the evidence taken when the defendant turned his pockets inside out.

The prosecution filed a motion to reconsider the suppression order, which the trial court denied. In doing so, the trial court stated its understanding that the defendant was required to remain with the officers for the duration of the warrant check.

On interlocutory appeal to this court, the prosecution challenges the trial court's suppression order. For the reasons stated, we reverse and remand.

## II. Analysis

■ As we have explained in our case law, not every encounter between police and citizens gives rise to Fourth Amendment protections because a "seizure" does not occur until a police officer has restrained the liberty of the citizen. *See People v. Johnson*, 865 P.2d 836, 841 (Colo.1994) (citing *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). There are three general categories of police-citizen encounters: (1) arrest, (2) investigatory stop, and (3) consensual interview. *Johnson*, 865 P.2d at 842. Arrests and investigatory stops are seizures and thus implicate the Fourth Amendment. *People v. Jackson*, 39 P.3d 1174, 1179 (Colo. 2002), *abrogated in part on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Consensual encounters are not seizures; they are requests for "voluntary cooperation," and do not implicate the Fourth Amendment. *Jackson*, 39 P.3d at 1179.

■ United States Supreme Court precedent establishes that the key question in determining whether a person is "seized" is whether, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Colorado case law similarly states that a person is "seized" when, "in the totali-

ty of the circumstances, a reasonable person in the citizen's position would no longer feel free to leave or to disregard the officers' request." *People v. Fines*, 127 P.3d 79, 81 (Colo.2006). The "'reasonable person test presupposes an *innocent* person.'" *Johnson*, 865 P.2d at 842 (quoting *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)).

■ In an effort to provide guidance in this area, we have enumerated a list of factors that may demonstrate that "a reasonable, innocent person would not feel free to decline the officers' requests or otherwise terminate the encounter." *Jackson*, 39 P.3d at 1184. These factors include but are not limited to:

(1) whether there is a display of authority or control over the defendant by activating the siren or any patrol car overhead lights;

(2) the number of officers present;

(3) whether the officer approaches in a nonthreatening manner;

(4) whether the officer displays a weapon;

(5) whether the officer requests or demands information;

(6) whether the officer's tone of voice is conversational or whether it indicates that compliance with the request for information might be compelled;

(7) whether the officer physically touches the person of the citizen;

(8) whether an officer's show of authority or exercise of control over an individual impedes that individual's ability to terminate the encounter;

(9) the duration of the encounter; and

(10) whether the officer retains the citizen's identification or travel documents.

*Id.* (citing *People v. Paynter*, 955 P.2d 68, 73–75 (Colo.1998)).

In addition to these factors, we have considered whether, and under what circumstances, a police officer's request for a citizen's identification and subsequent check for outstanding warrants transforms a consensual encounter into an investigatory stop. *See Martinez*, 200 P.3d at 1058–59 (holding that the police subjected the defendant to an investigatory stop when they directed the de-

fendant to come out of the bathroom and into a separate room, and then ran a clearance check to determine whether the defendant had any outstanding warrants); *Padgett*, 932 P.2d at 814 (holding that the police officer stopped the defendant when the officer told the defendant he could "be on [his] way if [he] didn't have any warrants"); *cf. Paynter*, 955 P.2d at 75 (Colo.1998) (holding that an officer's request for a citizen's identification, by itself, did not amount to a seizure).

■ We have emphasized that a stop occurs where "an individual reasonably infers that he cannot leave the area until the officer has the opportunity to check whether the individual has any outstanding warrants against him." *Martinez*, 200 P.3d at 1057. This reasonableness inquiry must take into account the totality of the circumstances, *see Fines*, 127 P.3d at 81, as we have cautioned against adopting any *per se* rule in this area:

> [R]ather than to rely upon a single factor and announce a *per se* rule, a court must consider the totality of the circumstances to determine whether the police exercised force or authority to effect a stop, or whether the police merely sought the voluntary cooperation of a citizen through a consensual encounter.

*Paynter*, 955 P.2d at 72–73 (declining to adopt a *per se* rule that a police officer's request for a citizen's identification, without more, constitutes a seizure); *see also Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (observing that in Fourth Amendment cases, the Supreme Court has "constantly eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry").

### III. Application

■ Here, the trial court reasoned that, if not for the warrant check, the defendant's contact with police would not have constituted a stop. Many of the facts found by the court did not weigh in favor of an investigatory stop. The court found that when approaching the defendant, the officers did not turn on their overhead lights. Only two officers were present and they did not act in a threatening manner, or use language or tone of voice indicating that compliance with

their requests might be compelled. They did not display weapons or touch the defendant. The length of time from the initial contact to the discovery of the pipe was no more than "a couple of minutes." During this encounter, the police did not retain any physical identification documents from the defendant.

The trial court concluded that the warrant check tipped the scale, converting an otherwise consensual encounter into an investigatory stop because the defendant had been required to remain with the officers until the warrant check was concluded. However, there is no evidence in the record regarding whether the defendant was told he needed to stay during the warrant check, or even indicating that he was aware the warrant check was occurring.

Although the trial court cites *Martinez* and *Padgett* to support its ruling, both can be distinguished from the facts of this case. In *Martinez*, the police told the defendant to come out of the bathroom, directed him into a separate room, and then ran a warrant check. 200 P.3d at 1058–59. In *Padgett*, the defendant told the officer that he wanted to leave, but the officers refused to let him until the check came back clear of outstanding arrest warrants. 932 P.2d at 814. Thus, in both cases, the defendant was aware of the warrant check and the check was accompanied by other circumstances that, when taken together, suggested a reasonable person would not feel free to leave.

An inquiry into whether an individual is free to leave must be based on a consideration of the totality of the circumstances. *Paynter*, 955 P.2d at 72–73. Here, there is no support for the trial court's determination on the motion for reconsideration that the defendant was not free to leave because the officers required him to remain for the warrant check. We therefore conclude that trial court erred in suppressing the evidence on this basis.

■ However, we turn briefly to address the defendant's additional contention. The defendant argues to us that he did not consent to the search of his pockets.

C.A.R. 4.1 provides an appeal for the prosecution rather than for the defendant. *See* C.A.R. 4.1(a) ("The state may file an interloc-

utory appeal in the supreme court from a ruling of a district court granting a motion ... made in advance of trial by the defendant ... to suppress evidence ....”); *see also* section 16–12–102(2), C.R.S. (2008). Consequently, we lack jurisdiction to address an issue the trial court resolved in favor of the prosecution. *See People v. Gothard,* 185 P.3d 180, 183 (Colo.2008) (holding that issues resolved in favor of the prosecution cannot be considered on the prosecution's interlocutory appeal from an order granting the defendant's suppression motion); *People v. Reyes,* 956 P.2d 1254, 1256 (Colo.1998) (same).

Here, the issue of whether the defendant voluntarily consented to the search of his pockets is an issue resolved by the trial court in favor of the prosecution, and thus we do not consider it here. Accordingly, we express no opinion as to the merits of the defendant's arguments regarding this issue on interlocutory appeal. *See Gothard,* 185 P.3d at 183.

### IV.   Conclusion

For the reasons stated, we reverse the trial court's order granting the defendant's motion to suppress and remand the case to the trial court for proceedings consistent with this opinion. Upon remand, the trial court may, in its discretion, consider additional evidence to determine whether the defendant was not free to leave when the officers conducted the warrant check.