1
 2026 CO 38 The People of the State of Colorado, Plaintiff-Appellant In the Interest of T.J.W., Juvenile-Appellee L.C.W. and D.W. and Concerning Respondents-Appellees No. 25SA245Supreme Court of Colorado, En BancJune 1, 2026

 Interlocutory Appeal from the District Court Douglas County
 District Court Case No. 25JD96 Honorable Ryan J. Stuart,
 Chief Judge

 Attorneys for Plaintiff-Appellant: George Brauchler, District
 Attorney, Twenty-third Judicial District Megan Rasband, Chief
 Deputy District Attorney Castle Rock, Colorado

 Attorneys for Juvenile-Appellee: The Juba Law Office, PLLC
Michael S. Juba Denver, Colorado

 No
 appearance on behalf of: L.C.W. and D.W.

 JUSTICE BOATRIGHT delivered the Opinion of the Court, in
 which CHIEF JUSTICE MÁRQUEZ, JUSTICE HOOD, JUSTICE
 GABRIEL, JUSTICE SAMOUR, JUSTICE BERKENKOTTER, and JUSTICE
 BLANCO joined.

 OPINION

 BOATRIGHT, JUSTICE

 ¶1
 Through Colorado's Safe2Tell program,[1] Assistant
 Principal Craig Bowman received an anonymous tip that
 described a student named "T.J." smoking marijuana
 in a teacher's sixth period biology class at
 approximately 12:30 p.m. Bowman searched T.J.W.'s
 backpack and found a marijuana vape pen. The People later
 charged T.J.W. with marijuana possession. T.J.W. filed a
 motion to suppress evidence of the marijuana vape pen, which
 the district court granted, finding that Bowman's search
 was illegal under the Fourth Amendment. The People filed an
 interlocutory appeal, challenging that order.

 ¶2
 In evaluating whether the search of T.J.W.'s backpack
 violated the Fourth Amendment, we rely principally on the
 two-part test established in New Jersey v. T.L.O.,
 469 U.S. 325, 341 (1985), which provides that a school search
 is only reasonable if it is (1) "justified at its
 inception," and (2) "reasonably related in scope to
 the circumstances which justified the interference in the
 first place." (Quoting Terry v. Ohio, 392 U.S.
 1, 20 (1968).) We hold that the search of T.J.W.'s
 backpack was "justified at its inception" because
 the anonymous Safe2Tell tip, combined

 with Bowman's independent corroboration, supported a
 finding of reasonable suspicion.[2] Accordingly, we reverse the
 district court's suppression order.

 I.
Facts and Procedural History

 ¶3
 At 1:15 p.m. on a typical school day, Bowman, an assistant
 principal at Chaparral High School, received a Safe2Tell
 report stating that a male student named
 "T.J."—described as lean, tall, and with
 dirty blonde hair—had been smoking marijuana and
 covering it up with cologne in Ms. Betts's biology class
 at approximately 12:30 p.m.[3] The tipster did not identify
 themself.

 ¶4
 Bowman first verified that Ms. Betts's sixth period
 biology class was at the time of the alleged conduct. He then
 examined that class's roster and found that T.J.W., the
 only person at the school Bowman knew went by
 "T.J.," was on it. Bowman then had T.J.W. brought
 to his office. Although T.J.W. matched the description of the
 individual from the tip, Bowman did not smell marijuana on
 T.J.W. nor did he observe any signs of intoxication. Bowman
 told T.J.W. about the tip and searched T.J.W.'s backpack,
 where he found a marijuana vape pen.

 ¶5
The People later filed a petition in delinquency, charging
 T.J.W. with possession of marijuana or marijuana concentrate.
T.J.W. filed a motion to suppress evidence of the marijuana
 vape pen, arguing that the search was unlawful because it
 "was based solely on an anonymous Safe2Tell tip"
 and "none of the information in the tip was
 corroborated."

 ¶6
 Following a suppression hearing, the district court granted
 the motion, concluding that the search violated the Fourth
 Amendment. The district court cited T.L.O. to make
 clear that something less than probable cause was required
 here, applied a reasonable suspicion standard to its
 analysis, and concluded that Bowman lacked reasonable
 suspicion because the anonymous Safe2Tell tip was
 insufficiently corroborated.

 ¶7
The People filed an interlocutory appeal.

 II.
Analysis

 ¶8
We begin by laying out this court's jurisdiction and the
 appropriate standard of review. Then, we describe the
 relevant Fourth Amendment principles regarding reasonable
 grounds for a school search under T.L.O.'s first
 prong, including the reliability of anonymous tips within
 such analysis. We then apply these principles to the facts of
 this case.

 A.
Jurisdiction and Standard of Review

 ¶9
The People may file an interlocutory appeal to seek this
 court's review of a trial court's ruling on a motion
 to suppress evidence per C.A.R. 4.1 and section 16-12-102(2),
 C.R.S. (2025). The People must certify both that the appeal
 is not taken for purposes of delay and that the suppressed
 evidence is a substantial part of the proof against the
 defendant. C.A.R. 4.1(a); § 16-12-102(2). The People
 have met these conditions here.

 ¶10
"A trial court's order suppressing evidence presents
 a mixed question of fact and law." People v.
 Dacus, 2024 CO 51, ¶ 23, 559 P.3d 198, 203.
Therefore, we accept the trial court's findings of fact
 unless they are clearly erroneous, but we "assess the
 legal significance of the facts de novo." Id.
(quoting People v. Thompson, 2021 CO 15, ¶ 15,
 500 P.3d 1075, 1078).

 B.
Legal Principles

 ¶11
This case requires us to review two, often siloed areas of
 Fourth Amendment law. First, we examine T.L.O. and
 its progeny, which govern whether school searches are
 "reasonable" under the Fourth Amendment. 469 U.S.
 at 337. Second, we discuss the reliability of anonymous tips
 in determining whether there were reasonable grounds for a
 search.

 1.
Reasonable Grounds for a School Search

 ¶12
 The Fourth Amendment protects individuals against
 unreasonable searches and seizures by the government, U.S.
 Const. amend. IV, including searches of students by public
 school officials, T.L.O., 469 U.S. at 337.
Ordinarily, to be legal, a warrantless search must be based
 on "probable cause" to believe that a violation of
 the law has occurred. See, e.g., United States
 v. Ross, 456 U.S. 798, 809 (1982).

 ¶13
 However, in the school context, to balance "the privacy
 interests of schoolchildren with the substantial need of
 teachers and administrators . . . to maintain order," a
 search's legality hinges not on probable cause, but
 "simply on the reasonableness, under all the
 circumstances, of the search." T.L.O., 469 U.S.
 at 341. Specifically, a school search is only reasonable if
 it is (1) "justified at its inception," and (2)
"reasonably related in scope to the circumstances which
 justified the interference in the first place."
Id. (quoting Terry, 392 U.S. at 20).
"Under ordinary circumstances," a school search is
 "'justified at its inception' when there are
 reasonable grounds for suspecting that the search will turn
 up evidence that the student has violated or is violating
 either the law or the rules of the school." Id.
 at 341-42.

 ¶14
We first applied T.L.O.'s two-part test in
 People in Interest of P.E.A., 754 P.2d 382, 386
(Colo. 1988), which concerned the search of a student's
 car on school grounds. There, we unequivocally concluded that
 reasonable suspicion applied

 when analyzing the reasonableness of a school search under
 T.L.O. P.E.A., 754 P.2d at 388-89. Although
 we acknowledged that the U.S. Supreme Court in
 T.L.O. did not expressly indicate "whether
 particularized suspicion is an essential element of the
 T.L.O. standard of reasonableness," we
 concluded that the reasonable suspicion standard set forth in
 People v. Wells, 676 P.2d 698, 701 (Colo. 1984),
 "applie[d] under the facts" of P.E.A.
 P.E.A., 754 P.2d at 388-89. Wells instructs
 courts to assess whether the "specific and articulable
 facts" and the "rational inferences from [those]
 facts" objectively created reasonable suspicion. 676
 P.2d at 701. Applying Wells, we held that the search
 was "justified at its inception" because the
 circumstances "establishe[d] the articulable facts and
 concomitant rational inferences necessary to create a
 reasonable suspicion that P.E.A. possessed drugs or other
 contraband." P.E.A., 754 P.2d at 389.

 ¶15
We later addressed another school search in People in
 Interest of J.G., 2024 CO 16, ¶ 1, 545 P.3d 954,
 958, where a student was subjected to daily searches per a
 safety plan that went into effect after he was adjudicated
 delinquent for various firearms-related crimes. We determined
 that the search was "justified at its inception"
 under T.L.O., even in the absence of
 "individualized suspicion," because the unique
 circumstances of that case further diminished the
 student's expectation of privacy. J.G.,
 ¶¶ 24, 27, 545 P.3d at 961. Specifically, we found
 that J.G. should not have "expect[ed] privacy in a
 backpack he brought to school"

 because he was subject to daily searches and, in fact, had
 previously complied with such searches. Id. at
 ¶ 26, 545 P.3d at 961.

 ¶16
The People seem to analogize the safety plan of J.G.
 to the "unique circumstances of the Safe2Tell
 program"—particularly the fact that the program is
 "premised on anonymity." Accordingly, the People
 suggest that when a school search stems from a Safe2Tell tip,
 courts should require something less than the reasonable
 suspicion standard required for a Terry stop. But
 J.G. does not dilute our general requirement of
 reasonable suspicion for school searches. In J.G.,
 the student had a particular reason to have a diminished
 expectation of privacy. Id. The same is not true
 here. The mere existence of the Safe2Tell program did not
 further diminish T.J.W.'s expectation of privacy. Nor are
 we persuaded by the People's arguments that this
 situation otherwise requires us to amend this standard to
 account for the "danger" posed by marijuana use in
 schools.[4]

 Accordingly, courts should apply a reasonable suspicion
 standard for determining whether a school search is
 reasonable under T.L.O.

 2.
Reliability of Anonymous Tips

 ¶17
 When the grounds for a search are based in whole or in part
 on an informant's tip, courts must assess the tip's
 reliability. See, e.g., Alabama v. White,
 496 U.S. 325, 328 (1990). This totality of the circumstances
 analysis looks to the tip's "indicia of
 reliability" to ascertain whether it adequately
 establishes the informant's "veracity" and
 "basis of knowledge." Id. at 328-29 (first
 quoting Adams v. Williams, 407 U.S. 143, 147 (1972);
 and then quoting Illinois v. Gates, 462 U.S. 213,
 230 (1983)).

 ¶18
 Generally, an anonymous tip is less reliable than a tip from
 an identified informant, in part because anonymous tips
 "seldom demonstrate[] the informant's basis of
 knowledge or veracity." Id. at 329 (citing
Gates, 462 U.S. at 237). However, under certain
 circumstances even anonymous tips can demonstrate
 "sufficient indicia of reliability" to support a
 finding of reasonable suspicion. Id. at 327. For
 instance, an anonymous tip can be "sufficiently
 corroborated" by officer observations so as to
 "impart[] some degree of reliability." Id.
 at 331-32; see also Dacus, ¶ 32, 559 P.3d at
 204 (observing that a "truly anonymous" tip can
 support a finding of reasonable suspicion "'if it
 contains specific details corroborated by police
 observation'" (quoting People v. Martinez,
 200 P.3d 1053, 1058 (Colo. 2009))).

Such corroboration allows investigating officers to assess
 the tipster's veracity and basis of knowledge in part
 because an "informant who is proved to tell the truth
 about some things is more likely to tell the truth about
 other things." Navarette v. California, 572
 U.S. 393, 398 (2014); see also White, 496 U.S. at
 332 ("When significant aspects of the caller's
 predictions were verified, there was reason to believe not
 only that the caller was honest but also that he was well
 informed, at least well enough to justify the stop.").

 ¶19
 In Dacus, we identified three forms of anonymous
 tips, each with varying levels of reliability: (1) a tip from
 an unidentified "citizen informant"; (2) a tip from
 an informant who makes "first-hand, contemporaneous
 observations and likely is not affiliated with the alleged
 criminal activity"; and (3) a "truly
 anonymous" tip. ¶¶ 30-31, 559 P.3d at 203-04.

 ¶20
We explained that tips from identified citizen
 informants can alone create reasonable suspicion because such
 informants, having "no motive but public service"
 and no "expectation of payment," nonetheless
 identify themselves and "volunteer[] information to the
 police," meaning they have "inherent
 credibility." Id. at ¶ 27, 559 P.3d at 203
(quoting People v. Saars, 584 P.2d 622, 626 (Colo.
1978)). We recognized that this logic extends to
 unidentified citizen informants, as they are
 similarly less likely to "fabricate information in
 return for immunity or other compensation." Id.
 at ¶ 30, 559 P.3d at 204 (quoting Martinez, 200
 P.3d at 1057).

 ¶21
 Even if an anonymous tip does not indicate that it came from
 a citizen informant, it can still create reasonable
 suspicion, on its own, if it demonstrates that the tipster
 (1) "made first-hand, contemporaneous
 observations," and (2) "likely is not affiliated
 with the alleged criminal activity." Id.

 ¶22
 If the tip does not provide even this information, it may be
 "truly anonymous." Id. at ¶ 31, 559
 P.3d at 204. "[T]ruly anonymous" tips are those
 where "(1) the caller does not provide their name and
 has no known prior record of providing information, (2) the
 circumstances do not suggest that the caller was a citizen
 informant, and (3) the information provided is insufficient
 to show that the caller was an unaffiliated bystander
 contemporaneously witnessing criminal activity."
Id. Such a tip "does not provide the police
 with a way to assess the caller's veracity or basis of
 knowledge." Id. Consequently, "without
 more"—such as "'specific details
 corroborated by police observation'"—a truly
 anonymous tip is "insufficient to establish reasonable
 suspicion." Id. at ¶¶ 31-32, 559 P.3d
 at 204 (quoting Martinez, 200 P.3d at 1058).

 C.
The Safe2Tell Report Here Supports a Finding of Reasonable
 Suspicion

 ¶23
 The question here is whether Bowman, in light of the
 Safe2Tell tip and his own investigation, had reasonable
 suspicion to search T.J.W.'s backpack—i.e., whether
 he had sufficient "articulable facts and concomitant
 rational inferences" to suspect criminal activity or a
 violation of school policy. P.E.A., 754 P.2d at
 388-89.

As we explained above, an informant's tip may support a
 finding of reasonable suspicion so long as its "indicia
 of reliability" supports the tipster's
 "veracity" and "basis of knowledge."
White, 496 U.S. 328-29 (first quoting
 Adams, 407 U.S. at 147; and then quoting
 Gates, 462 U.S. at 230). And even a "truly
 anonymous" tip may provide reasonable suspicion so long
 as it is supported by something more, like independent
 corroboration. Dacus, ¶¶ 31-32, 559 P.3d
 at 204.

 ¶24
 First, it is well established that the currentness, or
 freshness, of the information in a tip is highly relevant to
 its reliability. See, e.g., People v.
 Miller, 75 P.3d 1108, 1113 (Colo. 2003). A fresh, rather
 than stale, tip is one that is reported in close proximity to
 the time of the alleged events and is more reliable in part
 because it "negate[s] the likelihood of deliberate . . .
 misrepresentation." Navarette, 572 U.S. at
 399-400 (quoting Fed.R.Evid. 803(1) advisory committee's
 note to 1972 proposed rules). In People in Interest of
 C.C-S., 2021 COA 127, ¶¶ 4-5, 28, 503 P.3d
 152, 155, 159, a division of the court of appeals found that
 information in a tip that described a month-old Snapchat
 video "was deficient, in large part, because it was
 stale." In contrast, the information in the tip here was
 fresh, as Bowman received it only forty-five minutes after
 the alleged events occurred.

 ¶25
 Second, even if this tip were "truly anonymous"
 under Dacus, Bowman's additional corroboration
 sufficiently bolstered its reliability.[5] Here, the tipster
 provided numerous details: the student's name
 ("T.J."); where the student was when the alleged
 conduct occurred (in Ms. Betts's biology class at
 approximately 12:30 p.m.); and a description of what
 "T.J." looked like (male, lean, and tall with dirty
 blonde hair). Bowman's corroboration of these details
 before the search established that the tipster had some basis
 of knowledge and partially confirmed the tipster's
 veracity. See Navarette, 572 U.S. at 398 ("[A]n
 informant who is proved to tell the truth about some things
 is more likely to tell the truth about other things
 ....").

 ¶26
 T.J.W. maintains that the actions Bowman took to verify the
 tip's details were insufficient to serve as corroboration
 because he only verified noncriminal activity. We
 are not persuaded.

 ¶27
 It is true that corroboration of criminal activity is one
 way to enhance the reliability of a tip. See
Martinez, 200 P.3d at 1058 ("Even if insufficiently
 detailed,

 a tip may be adequately corroborated if police directly
 observe the criminal activity alleged."). However, no
 authority cited by T.J.W. establishes that such corroboration
 must be of criminal activity. Instead, any
 kind of corroboration of the information in the tip, whether
 of criminal conduct or otherwise, can bolster the reliability
 of an anonymous tip because it allows officers to confirm a
 tipster's basis of knowledge and veracity. See,
 e.g., Navarette, 572 U.S. at 398.

 ¶28
 Bowman's corroboration did just that. First, Bowman only
 knew one "T.J." at Chaparral High School, T.J.W.
 Second, Bowman corroborated the tip's description of
 T.J.W.'s precise location—Ms. Betts's biology
 class—and that he likely was at that location at the
 time alleged in the tip, 12:30 p.m. Third, T.J.W. matched the
 detailed description of "T.J." in the
 tip—male, lean, and tall, with dirty blonde hair. All
 told, we conclude that the corroborated details of the
 Safe2Tell report were sufficient to demonstrate the
 tipster's veracity and basis of knowledge of T.J.W.'s
 activities. See White, 496 U.S. at 328-29.

 ¶29
 To reiterate, the Safe2Tell report at issue here was fresh,
 received only forty-five minutes after the alleged events,
 and provided detailed information into the suspect's
 identity and whereabouts during the time of the alleged
 criminal activity, much of which Bowman corroborated before
 he conducted the search. Thus, we hold that the search of
 T.J.W.'s backpack was "justified at its
 inception"

 because the anonymous Safe2Tell tip, combined with
 Bowman's independent corroboration, supported a finding
 of reasonable suspicion.

 III.
Conclusion

 ¶30
 For the foregoing reasons, we reverse the district
 court's suppression order and remand the case for further
 proceedings consistent with this opinion.

---------

[1] Safe2Tell is a statewide statutory
 program that allows students and members of the community to
 "provide anonymous information about unsafe, potentially
 harmful, dangerous, violent, or criminal activities in
 schools" to law enforcement, public safety agencies, and
 school officials. § 24-31-602(1)(a), C.R.S.
 (2025).

[2] Because T.J.W. does not contest the
 reasonableness of the scope of the search, we do not address
 the second prong of the T.L.O. test.

[3] As we do not have access to the
 Safe2Tell report, we base our description on the district
 court's findings of fact, as well as Bowman's
 uncontested testimony at the suppression hearing.

[4] The People imagine a scenario
 involving guns rather than marijuana. See In re
 K.J., 227 Cal.Rptr.3d 380, 388-90 (Cal.Ct.App. 2018)
(deeming a tip reliable but nonetheless remarking that the
 search would have been reasonable regardless given "the
 'extraordinary dangers' presented by the possibility
 that a student was brandishing a handgun at school"
(quoting Florida v. J.L., 529 U.S. 266, 272
(2000))). This analogy is inapt—the possession or use
 of marijuana in schools has not been treated as an
 "extraordinary danger" that would justify further
 erosion of students' legitimate expectations of privacy.
We thus express no opinion on whether a tip involving guns or
 other drugs would implicate a different standard.

[5] The People ask us to overrule
 C.C-S., where a division of the court of appeals
 observed that "the anonymity of tips received by the
 Safe2Tell program does not ensure, without more, that such
 tips will provide reasonable suspicion as required by the
 Fourth Amendment." ¶ 26, 503 P.3d at 158. Because
 we determine that the details of this tip, combined with
 Bowman's subsequent corroboration, satisfied reasonable
 suspicion, we need not address whether it is necessary to
 overrule C.C-S.

---------